**PERINI–NORTH RIVER ASSOCIATES, a corporation, Plaintiff-Appellant,**

**v.**

**CHESAPEAKE & OHIO RAILWAY COMPANY and Penn Central Transportation Company, Defendants-Appellees.**

No. 76–2394.

United States Court of Appeals, Third Circuit.

Argued June 9, 1977.

Decided Sept. 8, 1977.

Budd, Larner, Kent, Gross, Picillo & Rosenbaum, Newark, N. J., for plaintiff-appellant; John J. Budd, of counsel.

Schumann, Hession, Kennelly & Dorment, Jersey City, N. J., for defendants-appellees; John M. Walsh, of counsel.

Before WEIS, STALEY and GARTH, Circuit Judges.

## OPINION OF THE COURT

STALEY, Circuit Judge.

This case concerns the circumstances under which a carrier may not avoid liability under the Carmack Amendment, 49 U.S.C. § 20(11), despite the consignee's failure to timely file a written claim for damages as required by the bill of lading.

Appellant Perini-North River Associates (Perini) brought an action under a straight bill of lading to recover the repair costs of a crane damaged during shipment by defendant carriers on August 14, 1972.[1] The carri-

---

1. After Perini commenced the action in the Superior Court of New Jersey, the C & O Railway petitioned for removal to the United States District Court for the District of New Jersey. 28 U.S.C. §§ 1332, 1441.

The C & O Railway was the initial carrier. Perini's crane was sideswiped in the Penn Central Dewitt Yard approximately a week after Penn Central accepted the railcars at an inter-change point in New York. Under 49 U.S.C. § 20(11), the originating carrier's liability extends to any damage done to property in interstate commerce under a through bill of lading. The delivering carrier is equally liable. *Cincinnati, N. O. & Tex. Pac. Ry. v. Rankin,* 241 U.S. 319, 36 S.Ct. 555, 60 L.Ed. 1022 (1916); *Atlantic Coast Line R.R. v. Riverside Mills,* 219 U.S. 186, 31 S.Ct. 164, 55 L.Ed. 167 (1911).

ers' defense was that Perini had failed to give proper notice of loss or claim within nine months, as specified in the bill of lading:

> As a condition precedent to recovery, claims must be filed in writing with the receiving or delivering carrier . . . within nine months after delivery. . . Where claims are not filed or suits are not instituted thereon in accordance with the foregoing provisions, no carrier hereunder shall be liable, and such claims will not be paid.

(Appendix to Appellant's Brief at 54a).

Perini's yard superintendent discovered the damage on August 29, 1972, and requested a meeting with a Penn Central representative at which the crane could be examined and repair procedures discussed. (53a) Penn Central sent Luke O'Donnell, an "Over short and damage" clerk who examined damaged cars and sent verification reports to the railroad's claim agents in Buffalo, New York. (23a) Normally, upon receipt of this written report, the Buffalo office would dispatch an investigator. (24a) O'Donnell would also forward two copies of his damage report to the consignee for use in preparing its notice of claim. (33a, 35a) Meanwhile the claimant could proceed with repairs, since O'Donnell's report would confirm the fact and repair cost of the damage. (82a)

On August 30, 1972, O'Donnell met with three Perini superintendents, Perini's master mechanic in charge of equipment maintenance, Perini's executive and safety engineer, and a representative of the manufacturer of the crane. (54a, 81a) The district court found that O'Donnell told them Perini need not file a claim, since one had already been filed when the crane was reloaded after the accident. He was referring to a Freight Inspection Report prepared on August 15, 1972 by Penn Central employee E. R. Monto and mailed to the Freight Claims Office in Buffalo.[2] (26a, 57a) A copy of this report had also been sent to O'Donnell's office in Weehawken prior to his inspection of the crane. (39a) When he returned from the Perini meeting, his superior told him he would not have to file his own report, but could verify Monto's report with the Buffalo office by telephone. (28a, 83a)

This was not the only deviation from usual practice. After the various inspection reports were filed, Penn Central would on its own initiative send claim forms to the consignee of damaged goods. No forms were sent to Perini—nor was any mention made of the claim during subsequent unrelated transactions—until June 19, 1973, when Perini's marine superintendent contacted the Buffalo office. In a memo accompanying the forms, Penn Central's freight claims supervisor wrote that Perini's case had previously been assigned a file number which should be used when Perini filed its claim. (58a) When Perini returned the completed form on June 27, 1973, slightly more than ten months after the date of delivery, Penn Central disallowed the claim because it had been filed out of time.

Perini concedes that, absent special circumstances, a carrier's liability for freight damage is conditioned on compliance with the filing deadline in the bill of lading. However, Perini argues that Penn Central's actual knowledge of the damage, its departure from normal claims procedure, and O'Donnell's waiver of the filing requirement preclude the defense of untimeliness under the doctrine of estoppel. The trial court found that Perini knew a written claim was necessary, but neglected to file within nine months due to reliance on

---

**2.** The Monto document was a Form 1204, which merely reports incident damage. At the top it is inscribed "NOTE: This document does not constitute a claim within meaning of Section 2(b) of Bill of Lading Contract." (82a, 78a) At oral argument counsel for appellant disclosed that Perini's representatives never saw Monto's report.

This disclaimer complies with ICC regulations which provide that inspection reports alone do not comply with minimum claim filing requirements. 49 C.F.R. § 1005.2(c) (1976). *See also Delphi Frosted Foods Corp. v. Illinois Cent. R.R.,* 188 F.2d 343 (6th Cir.), *cert. denied,* 342 U.S. 833, 72 S.Ct. 53, 96 L.Ed. 630 (1951) (written notices by claimant's customers did not comply with requirement).

O'Donnell's dispensation. (83a) The trial court also held that O'Donnell had neither actual nor apparent authority to waive the requirement, and Perini's unquestioning reliance on his word was unjustified. (85a) Accordingly the district court concluded that since defendants were not estopped to raise Perini's untimeliness, it furnished a complete defense. After a bench trial, the district court entered judgment for the defendants. Due to the peculiar facts in this case, we disàgree.

■■■ The Supreme Court early held that the Carmack Amendment required some written claim, although the particular form was dictated by "practical exigency." *St. Louis, Iron Mountain & Southern Railway v. Starbird*, 243 U.S. 592, 605, 37 S.Ct. 462, 61 L.Ed. 917 (1917); *Georgia, Florida & Alabama Railway v. Blish Milling Co.*, 241 U.S. 190, 198, 36 S.Ct. 541, 60 L.Ed. 948 (1916). The Court stated that

> the parties could not waive the terms of the contract under which the shipment was made pursuant to the Federal Act; nor could the carrier by its conduct give the shipper the right to ignore these terms which were applicable to that conduct and hold the carrier to a different responsibility from that fixed by the agreement made under the published tariffs and regulations. A different view would antagonize the plain policy of the Act and open the door to the very abuses at which the Act was aimed.

*Blish Milling Co.*, 241 U.S. at 197, 36 S.Ct. at 544.

This language has been interpreted as a flat rejection of estoppel in the context of a Carmack Amendment claim. *E. g., B. A. Walterman Co. v. Pennsylvania Railroad*, 295 F.2d 627 (6th Cir. 1961); *Henry Pratt Co. v. Stor Dor Freight Systems, Inc.*, 416 F.Supp. 714 (N.D.Ill.1975); *Lucas Machine Division, New Britain Machine Co. v. New York Central Railroad*, 236 F.Supp. 281 (N.D.Ohio 1964). The Court made that statement, however, in response to a consignee's attempt to circumvent the writing requirement by bringing the action in trover, under the theory that the carrier's mis-delivery converted the goods and was an abandonment of the contract. The Court would not let the consignee escape the provisions of the bill of lading simply by changing the form of the complaint against the carrier. In a subsequent case holding that misdelivery alone was not grounds for estoppel, the question "[w]hether under any circumstances the shipper may rely upon that doctrine in avoidance of the time limitation clause of the bill of lading" was expressly left open. *Chesapeake & Ohio Railway v. Martin*, 283 U.S. 209, 222, 51 S.Ct. 453, 458, 75 L.Ed. 983 (1931).

Courts followed the reasoning in *C & O Railway* by demanding compliance with the writing requirement unless the carrier's conduct in some way induced the claimant's failure to file. In *Lehigh Valley Railroad v. State of Russia*, 21 F.2d 396, 404 (2d Cir.), *cert. denied*, 275 U.S. 571, 48 S.Ct. 159, 72 L.Ed. 432 (1927), the carrier argued that the claimant had not filed with the freight claim agent specified in the bill of lading. A railroad agent had written the claimant, instructing him where to send the claim; since the letters misled the claimant, the railroad was estopped from raising the filing error as a defense. Similarly, in *Insurance Co. of North America v. Newtowne Manufacturing Co.*, 187 F.2d 675, 680 (1st Cir. 1951), the district court correctly gave the jury a special interrogatory as to whether a carrier's claims agent had by words or actions induced the plaintiff not to file. When the jury answered in the negative, the court found the estoppel inquiry was closed and held the claimant to the writing requirement in the bill of lading. *See also Northern Pacific Railway v. Mackie*, 195 F.2d 641 (9th Cir. 1952); *Penn State Laundry Co. v. Pennsylvania Railroad*, 134 F.Supp. 955 (W.D.Pa.1955).

In most cases dealing with an estoppel issue the claimant gave the carrier oral notice or legitimately assumed the carrier already had actual knowledge of the problem. Often, plaintiffs did not plead inducement by the carrier, but argued unsuccessfully that oral notice or actual knowledge should suffice. *Baltimore & Ohio Railroad*

v. Leach, 249 U.S. 217, 39 S.Ct. 254, 63 L.Ed. 570 (1919); St. Louis, Iron Mountain & Southern Railway v. Starbird, 243 U.S. 592, 37 S.Ct. 462, 61 L.Ed. 917 (1917); East Texas Motor Freight Lines v. United States, 239 F.2d 417 (5th Cir. 1946).

It appears that the distinction between the two lines of attack on the writing requirement—estoppel and actual knowledge—eventually blurred. See American Synthetic Rubber Corp. v. Louisville & Nashville Railroad, 422 F.2d 462, 468 (6th Cir. 1970) (claimant satisfied the writing requirement by showing documents to railroad officials rather than by filing); Thompson v. James G. McCarrick Co., 205 F.2d 897 (5th Cir. 1953) ("protest letter" satisfied requirement). The confusion came to a head in Hopper Paper Co. v. Baltimore & Ohio Railroad, 178 F.2d 179 (7th Cir. 1949), cert. denied, 339 U.S. 943, 70 S.Ct. 797, 94 L.Ed. 1359 (1950). The railroad's conduct in Hopper Paper raised a potential estoppel issue: after the plaintiff's property was negligently destroyed in a railway wreck, the carrier notified plaintiff of the disaster, then sold the salvage without plaintiff's knowledge and pocketed the proceeds. The court was obviously concerned with the equities of the situation, but articulated its holding in terms of actual knowledge rather than estoppel:

> it is undisputed that defendant and its agents were fully aware and cognizant of the existence of all the facts concerning the wreck and destruction of the carload of paper. In such a situation a formal notice by plaintiff to the defendant could not have accomplished anything more. Hence, we conclude that the carrier may not use the provisions of the bill of lading to shield itself from the liability imposed upon it by the statute and the common law . . . . . To hold otherwise would not be construing the bill of lading "in a practical way."

Id. at 182.

■ Hopper Paper was considered a maverick decision, and only several cases followed its lead. Loveless v. Universal Carloading & Distributing Co., 225 F.2d 637

(10th Cir. 1955); Stearns-Roger Corp. v. Norfolk & Western Railway, 356 F.Supp. 1238 (N.D.Ill.1973). Most courts criticized Hopper Paper and demoted it to the ranks of cases distinguishable on their facts. See Sorkin, How To Recover For Loss or Damage to Goods In Transit § 7.03, at 7–10 (1976). Yet Hopper Paper seems misguided only in that its rationale equated actual knowledge with estoppel, and as a result concentrated on what the carrier knew rather than on what it did. We do not question the accepted rule that actual knowledge on the part of the carrier cannot substitute for the written notice required by a bill of lading. The estoppel inquiry is not closed, however, simply by virtue of that principle.

■ The Carmack Amendment, which codifies the common law liability of a carrier, creates a federal right. Therefore the question whether a carrier's conduct constitutes grounds for estoppel dispensing with the written claim requirement is a federal question. St. Louis, Iron Mountain & Southern Railway v. Starbird, 243 U.S. at 597, 37 S.Ct. 462; Insurance Co. of North America v. Newtowne Manufacturing Co., 187 F.2d 675, 680 (1st Cir. 1951). Cf. Lone Star Packing Car Co. v. Baltimore & Ohio Railroad, 212 F.2d 147 (5th Cir. 1954). Local rules of estoppel may not be applied so as to thwart the purposes of federal statutes. Sola Electric Co. v. Jefferson Co., 317 U.S. 173, 177, 63 S.Ct. 172, 87 L.Ed. 165 (1942). The converse is also true: the doctrine should be used when it enhances the statutory purpose. We conclude that it may appropriately be applied here.

The Carmack Amendment is part of the Interstate Commerce Act, which was primarily designed to prevent discrimination by carriers. New York v. United States, 331 U.S. 284, 67 S.Ct. 1207, 91 L.Ed. 1492 (1947). The filing requirement helps the consignee, since it facilitates prompt investigation of its claim. Realistically, however, the requirement benefits the carrier by providing a reliable record of potential liabilities. Henry Pratt Co. v. Stor Dor Freight Systems, Inc., 416 F.Supp. 714

(N.D.Ill.1975). Certainly the carrier gains if the consignee forfeits his cause of action through an inexcusable failure to file. *Cf. Gooch v. Short Line Railroad,* 258 U.S. 22, 42 S.Ct. 192, 66 L.Ed. 443 (1922).

 Assuming the filing requirement inures primarily to the carrier's benefit, we turn to the question whether Penn Central's conduct in this case merits that protection. The district judge found that Perini failed to file because its representatives relied on a perceived waiver by O'Donnell. (83a) The judge also determined that O'Donnell had no actual authority to waive the requirement and that appellant's reliance on his apparent authority was unjustified. (84a–85a) On this basis the court entered judgment for the carriers.

In this case we need not consider whether O'Donnell's representation, without more, would have sufficed to invoke the doctrine of estoppel.[3] The record as a whole, however, establishes factors in addition to O'Donnell's representation which make imposition of estoppel more compelling.[4] Penn Central's unexplained departure from its normal practice of forwarding claim forms and copies of the damage report to the consignee would tend to reinforce O'Donnell's purported waiver. Moreover, Penn Central's agents did not mention Perini's failure to file during the course of several unrelated transactions which occurred within nine months of the delivery of the crane. We do not suggest that it is the carrier's duty to remind a consignee of its pending claim. In light of Perini's "long and pleasant relationship" with Penn Central, however, it could reasonably interpret Penn Central's silence as a confirmation of O'Donnell's statement. (Transcript 7/22/76 at 6) When Perini's agent finally pursued the claim with the Buffalo office, he was given the file number which had already been assigned to both the car and the claim.

(58a) ICC regulations instruct the carrier to create a separate file only after a claim has been received. 49 C.F.R. § 1005.3(b) (1976).

As the trial judge found, Perini knew a written claim was necessary; Penn Central's irregular conduct misled Perini to the belief that this case was an exception to the rule. Even if Penn Central did not intend to convey a misleading impression, an equitable approach to the problem militates against penalizing the consignee for the carrier's ambiguity.

The judgment of the district court will be reversed and the case remanded to the district court with directions to enter judgment for the plaintiff in the amount of its stipulated damages together with interest and costs, if appropriate.

Judge WEIS dissents on the ground that such cases as *Chesapeake & Ohio Ry. v. Martin,* 283 U.S. 209, 51 S.Ct. 453, 75 L.Ed. 983 (1931), and *Gooch v. Oregon Short Line R.R. Co.,* 258 U.S. 22, 42 S.Ct. 192, 66 L.Ed. 443 (1922), are more controlling and bar recovery by the plaintiff. Moreover, pertinent rules of the Interstate Commerce Commission, 49 C.F.R. Part 1005, governing the filing of claims were binding on the plaintiff. *See also* S. Sorkin, How to Recover for Loss or Damage to Goods in Transit, § 7.04 (1976).

---

3. Significantly at oral argument it was indicated that had it been the President of Penn Central who had informed Perini that no claim need be filed, no issue would have been raised by the railroad concerning the timeliness of or necessity for Perini filing its claim.

4. As previously indicated, our discussion in text makes it unnecessary for us to review the district court's finding that O'Donnell had no apparent authority to make a valid waiver. At a minimum, we regard O'Donnell's representation as one factor among many which had the cumulative effect of misleading Perini.