## CIRCUIT COURT OF THE CITY OF RICHMOND

Kathryn W. Booth

     v.

United Van Lines, Inc.

July 13, 1990

Case No. LR 1748-2

By JUDGE ROBERT L. HARRIS, SR.

This case came before the court for trial, without a jury, on February 9, 1990. On the morning of the trial, before presenting evidence, counsel presented argument on defendant's motion for summary judgment. The court took the motion under advisement and proceeded to hear the case on the merits. Upon the conclusion of the plaintiff's testimony, and after the admission of various documents into evidence, both the plaintiff and the defendant rested.[1]

After reviewing the testimony, the documents, and the briefs of counsel, the court grants partial summary judgment for the defendant. Further, the court awards

---

[1] The only document formally received in evidence is the original itemized list of missing items received by United on September 22, 1988. However, counsel for the parties agreed that the court could consider as part of the record the contract file submitted by counsel for the defendant as well as all of the documents attached to the briefs filed by counsel.

judgment to the plaintiff in the amount of $3,050.00. The reasons for the foregoing rulings are set out below.

Two issues were presented to the court: (I) whether the plaintiff shipper waived any claims against the defendant carrier for loss or damage to her household goods when she signed the bill of lading and household goods inventory at the destination point; and (II) whether the plaintiff may recover for items for which no written claim was filed during the nine-month claims period specified in the bill of lading.

*Facts*

Based on the admissions of the parties in the pleadings, the testimony of the plaintiff and the documents admitted into evidence, the facts are generally undisputed. The plaintiff, Ms. Booth, contracted with the defendant, United Van Lines ("United"), through its agent, P. E. Burke Moving & Storage Corporation ("Burke") to transport her household goods from Westboro, Massachusetts, to Fredericksburg, Virginia. Burke loaded the goods on May 21, 1987, and delivered them on May 28, 1987. At the destination, Booth signed a "delivery acknowledgment" on the bill of lading above which is written: "Shipment was received in apparent good condition except as noted on inventory and services ordered were performed." On each page of the household goods descriptive inventory form, Booth signed in the "at destination" space, above which is written: "WARNING -- Before signing -- check shipment, count items, and describe loss or damage in space on the right above." She did not note any exceptions on the form in the spaces provided. The plaintiff testified that the driver was in a hurry and that he did not check off the list of inventoried items at destination individually with her.

On June 2, 1987, the plaintiff, with the assistance of an employee of the defendant's agent in Fredericksburg, Virginia, filled out a form titled: "Presentation of Claim for Loss or Damage." The claim form listed several damages or missing items. Also handwritten on the form, in the middle of the list of items were the words "Partial Claim." The claim form, which Ms. Booth signed, and the bill of lading both bear the notation that any claim for loss

or damage must be submitted in writing within nine months of the date of delivery. The plaintiff testified that no one told her about the nine-month deadline. She also testified that the defendant's agent assured her that if additional items were discovered missing or damaged, she (the defendant's agent) would take care of it.

The defendant's employees investigated the claim. Defendant paid $3,700.00 by check dated September 1, 1987, for repair of several of the items listed on the claim form filed in June, 1987. By letter dated September 2, 1987, from Rose Mary Witcher, Claim Department, to Ms. Booth, enclosing the check, the defendant informed the plaintiff that they were requesting a furniture restorer to obtain an estimate on the marble table and two Italian pots which were listed on the claim form as damaged. Ms. Booth negotiated the $3,700.00 check. United also paid, and Ms. Booth cashed, a check for $85.00 for repair of a Tri-fold mirror listed on the claim form.

During the period beginning in June, 1987, and ending in November, 1988, the plaintiff and defendant exchanged correspondence related to the four rugs listed as missing on the claim form, as well as the damaged items for which Ms. Booth had not been paid. The plaintiff testified that during the nine-month claims period, she told employees of the defendant that four cartons of assorted household items were also missing. Internal correspondence among United employees confirms her testimony. Ms. Booth did not itemize a list of missing items, other than those claimed on the original claim form, until September, 1988.

By letter dated November 4, 1988, from Rose Mary Witcher to Ms. Booth, United agreed to pay $2,300.00 to repair the marble table, two Italian pots and an umbrella stand. All of these items, except for the umbrella stand, were listed as damaged on the June, 1987, claim form. United denied all claims for missing items. The missing items included four small oriental rugs listed on the claim form, the items that Ms. Booth claimed were contained in four cartons, and a few other miscellaneous items. The latter items were itemized on the list sent to United in September, 1988.

On the advice of her attorney, Ms. Booth declined to cash the $2,300.00 check. She filed suit on May 31, 1989, to recover the claimed value of missing items,

$5,968.95, plus $2,300.00 for the cost to repair the damaged items mentioned above. The court accepted into evidence the itemized list of missing items received by United on September 22, 1988, as Ms. Booth's testimony as to their value.

### Discussion of Legal Issues

I. The first issue to be decided is whether the plaintiff waived any claims against the defendant by signing the bill of lading and household goods inventory at destination. The bill of lading constitutes the contract governing the rights and obligations of the parties with respect to the moving services performed by United. United argues that by signing the "delivery acknowledgment," the plaintiff agreed that the shipment was received in apparent good order except as noted on the household goods inventory. The plaintiff does not dispute this proposition. However, the plaintiff disagrees with the defendant's further contention that signing the acknowledgment waived all future claims.

This court is of the opinion that the signing of the acknowledgment is merely a certification that the goods were "apparently" in good order upon delivery. There is nothing in the contract that suggests that a shipper who does not note damages at the moment of delivery is precluded from making future claims. Further, the cases cited by the defendant, at best, support the proposition that the signed bill of lading constitutes prima facie evidence that the goods were delivered undamaged. *See, e.g., C. Itoh & Co. (America), Inc. v. Hellenic Lines, Ltd.,* 470 F. Supp. 594, 597 (S.D. N.Y. 1979). Even if this court were to accept that the plaintiff's signature constitutes prima facie evidence that the goods were delivered undamaged, there is ample evidence in the record to rebut that presumption. The plaintiff claimed damaged and missing items almost immediately after delivery. She filled out the claim form on June 2, 1987. She testified at trial that goods were missing or damaged as detailed on the claim form and on the list marked as plaintiff's exhibit 1.

It is the opinion of this court that the signing of the delivery acknowledgment does not preclude a shipper

from later claims that items are missing or damaged. Any presumption raised by the signing of the acknowledgment may be rebutted and has been successfully rebutted by the plaintiff here.

II. The second issue under consideration is whether the plaintiff may recover for items for which no written claim was filed within nine months after delivery. The transportation of household goods in interstate commerce is governed by the terms of the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 11707. That section provides that a carrier may not, by contract or otherwise, provide a period of less than nine months for filing a claim against it. The bill of lading that constitutes the contract between the parties here is consistent with the statute. It provides that claims against the carrier must be submitted in writing within nine months after delivery as a condition precedent to recovery. Such notice requirements have repeatedly been held valid by the United States Supreme Court. *See, e.g., Georgia F. & A. R. Co. v. Blish Milling Co.*, 241 U.S. 190 (1916).

The United States Supreme Court also ruled in the *Blish Milling* case that the notice provision does not require documents in a particular form. *Id.* at 198. However, the court has ruled that oral notice within the contractual period is not sufficient to satisfy the written notice condition. *St. Louis, Iron Mountain & Southern Ry. Co. v. Starbird*, 243 U.S. 592, 606 (1916).

Since the decisions in *Blish Milling* and *Starbird*, the Interstate Commerce Commission ("I.C.C.") in 1972 promulgated regulations providing that a claim for loss or damage shall not be voluntarily paid by a carrier unless the shipper files a written claim within the time limit specified in the bill of lading. 49 C.F.R. § 1005.2(a) (1988). Paragraph (b) of that section sets out minimum filing requirements. It provides that a communication (1) containing facts sufficient to identify the shipment; (2) asserting liability for alleged loss or damage, and (3) making claim for a specified or determinable amount of money is sufficient compliance with procedures for filing claims.

There is a split of authority among the federal circuit courts, both before and after the promulgation of the

I.C.C. regulations, on the issue of what constitutes a valid claim sufficient to satisfy the written claim condition. Only one federal circuit court has held that actual notice on the part of the carrier obviates the need for a communication of the claim from the shipper. *Hopper Paper Co. v. Baltimore & Ohio Ry. Co.*, 178 F.2d 179 (7th Cir. 1949), *cert. denied*, 399 U.S. 943 (1950). In that case, decided before the I.C.C. regulations were passed, a shipment of paper was destroyed in a train wreck. The carrier notified both the consignor and the consignee of the loss and admitted liability. No claim was made by the consignor until over eleven months had passed. *Id.*

The *Hopper* case has been almost unanimously disagreed with, criticized, and limited to its particular facts. Because the other federal circuit judges have taken such pains to distinguish or disavow *Hopper*, I will review their various decisions partly with reference to that case. In *Insurance Co. of North America v. Newtowne Mfg. Co.*, 187 F.2d 675, 681 (1st Cir. 1951), the court noted that *Hopper* "seems perhaps out of line with the other cases" but distinguished the case by reference to its peculiar facts. In the *Newtowne* case, the carrier denied having knowledge of the shipment or the loss and rejected the shipper's oral claim. The First Circuit held that because the shipper had made no written claim, its suit was barred. In a recent First Circuit case, the court called *Hopper* an extreme position, without addressing its validity. *Intech, Inc. v. Consolidated Freightways, Inc.*, 836 F.2d 672, 676 (1st Cir. 1987). In *Intech*, the court found that evidence of actual knowledge was not present as it was in *Hopper*. *Id.* The court then upheld the district court's decision to grant summary judgment for the carrier based on the shipper's failure to file a timely claim. *Id.* at 677.

The Second Circuit has not directly addressed *Hopper*, but the court's holding in a 1980 case is directly contrary to *Hopper*. In *Pathway Bellows v. Blanchette*, 630 F.2d 900 (2d Cir. 1980) *cert. denied*, 450 U.S. 915 (1981), the court held that a shipper's suit was barred where: (1) the carrier's agent had investigated the claimed damage and filled out a damage report, thus it had actual notice; (2) the shipper had sent a letter within the nine-month period giving notice of a future claim; and

(3) the shipper sent a letter comporting with the I.C.C. regulations that reached the carrier one day after the expiration of the nine-month period. The court held that the timely letter was insufficient under the I.C.C. regulations and that the second letter was late. In view of the court's holdings as to the inadequacy of the written notice, it is clear that the court did not even consider that actual notice could be a substitute.

The Third Circuit, in discussing *Hopper*, made the following comments: "*Hopper Paper* was considered a maverick decision . . . . Most courts criticized *Hopper Paper* and demoted it to the ranks of cases distinguishable on their facts." *Perini-North River Associates v. Chesapeake & Ohio Ry. Co.*, 562 F.2d 269, 273 (3d Cir. 1977). In the *Perini* case, the court held, in agreement with what it correctly perceived to be the generally-accepted rule, that actual knowledge on the part of the carrier cannot substitute for written notice. *Id.* However, the court held that the carrier was estopped from holding the shipper to the written notice requirement where it had misled the shipper by its conduct into believing that no written notice was required. *Id.* at 274. The court will return to the estoppel question later.

Although the Fourth Circuit has not addressed the issue, the Eastern District of Virginia has explicitly declined to follow *Hopper*. In *General Elec. Co. v. Brown Transport Corp.*, 597 F. Supp. 1258 (E.D. Va. 1984), the court held that (1) actual notice was not a substitute for a written claim and (2) the letter sent within the period was not sufficient to constitute a written claim under the I.C.C. regulations.

The Fifth Circuit distinguished *Hopper* on its facts, noting in a footnote that *Hopper's* holding has been questioned in several cases. *East Texas Motor Freight Lines v. United States*, 239 F.2d 417, 420 (5th Cir. 1956). The court held that the carrier did not have actual knowledge as in *Hopper*, and the shipper's claim was barred by its failure to file a timely written notice.

The Sixth Circuit, in *Delphi Frosted Foods Corp. v. Illinois Central Railroad Co.*, 188 F.2d 343, 345 (6th Cir. 1951) *cert. denied*, 342 U.S. 833, noted that *Hopper* was based upon its peculiar facts. The court in *Delphi* held that notice given by third parties was insufficient

to put the carrier on notice of the shipper's claim, and the shipper's claim was barred.

The majority of the Seventh Circuit, sitting *en banc*, declined to reconsider *Hopper* in a case where there was actual notice plus some form of written notice. *Wisconsin Packing Co. v. Indiana Refrigerator Lines*, 618 F.2d 441 (7th Cir. 1980) (*en banc*), *cert. denied*, 449 U.S. 837. In that case, the court held that the I.C.C. regulations did not apply to the notice required as a condition precedent to recovery in a lawsuit, but only to claims *voluntarily* settled by carriers. *Id.* at 445. However, the court held that, even if the regulations applied, the letter sent by the shipper was sufficient. *Id.* This holding is somewhat confusing considering the court's implication that the letter, standing alone, might be insufficient. *Id.* at 448. The court concluded that in combination with actual knowledge and an oral assertion of liability, the letter sent by the shipper fulfilled the notice requirement. *Id.* However, two dissenting judges in *Wisconsin Packing* opined that *Hopper* should be overruled, noting the criticism of other circuits and referring to it as "directly contrary to Supreme Court teaching." *Id.* at 452-53 (Sprecher, J., dissenting.)

The only Eighth Circuit case to address the issue predates *Hopper*. In *Manby v. Union Pacific Railroad Company*, 10 F.2d 327, 329 (8th Cir. 1926), the court held that neither (1) letters exchanged between the shipper and the carrier inquiring about the shipment and claiming that the carrier had delivered the shipment to the wrong consignee, nor (2) an oral claim made within the claims period fulfilled the contractual requirement of notice in writing. The United States District Court for Nebraska, within the Eighth Circuit, has had occasion to comment on *Hopper*. In a case factually similar to *Hopper*, the court held that neither oral notice nor actual knowledge fulfilled the written claim requirement. *Conagra, Inc. v. Burlington Northern, Inc.*, 438 F. Supp. 1266 (D. Neb. 1977). In *Conagra*, several railroad cars full of wheat derailed and most of the wheat was lost. The court distinguished the case from *Hopper* in that the defendant in *Hopper* admitted negligence when it notified the shipper of the loss. *Id.* at 1270. The court also noted the wide

criticism of *Hopper* and stated that "an extension of *Hopper* would result in a dubious precedent." *Id.*

The cases from the Ninth Circuit are of particular interest because of the reliance placed upon them by the plaintiff. In *Northern Pacific Ry. Co. v. Mackie*, 195 F.2d 641 (9th Cir. 1952), the court held that neither actual nor oral notice was sufficient. The court stated that the general rule of the federal cases required some form of written notice. *Id.* at 642. The court found it unnecessary to reconcile *Hopper* because of its unusual facts. *Id.* at 643. Two recent cases seem to liberalize the *Mackie* rule somewhat. In *Taisho Marine & Fire Ins. Co. v. Vessel Gladiolus*, the court held that, based on the character of the negotiations between the parties, the plaintiff had not substantially complied with the notice requirement. 762 F.2d 1364, 1368-69 (9th Cir. 1985). In discussing the case law, the court noted that the written notice requirement is relaxed where the carrier has actual knowledge and conducts a full inquiry, citing *Wisconsin Packing*. The third case, *Culver v. Boat Transit, Inc.*, 782 F.2d 1467, 1469 (9th Cir. 1986), attempted to reconcile *Mackie* and *Taisho*. The court held that *Taisho* did not dispense with the requirement of written notice. *Id.* Rather, the case held that a more informal written notice could be accepted where the carrier had actual knowledge and conducted an investigation. *Id.*

The Tenth Circuit has held that a writing, however informal, which indicates that a claim is asserted and identifies the shipment is adequate to comply with the notice requirement. *Atchison, Topeka & Santa Fe Ry. Co. v. Littleton Leasing and Investment Company, Inc.*, 582 F.2d 1237, 1240 (10th Cir. 1978). However, the court cited *Hopper* and *Loveless v. Universal Carloading and Distributing Company*, 225 F.2d 637 (10th Cir. 1955), an actual knowledge case from its own circuit following *Hopper*, with apparent approval. *Id.* The only clue to understanding the apparent contradiction is the court's assertion in *Littleton Leasing* that the circumstances of *Loveless* and *Hopper* were not present. *Littleton Leasing* at 1241. Perhaps the court would allow the written notice requirement to be fulfilled by actual knowledge under *Hopper* or *Loveless* facts.

The Eleventh Circuit distinguished *Hopper* on its facts but noted in dicta that it doubted whether that

circuit would adopt the *Hopper* rule. *Farmland Industries, Inc. v. Seaboard Coast Line Railroad Co.*, 733 F.2d 1509, 1510 (11th Cir. 1984). In *Farmland*, the train carrying the shipper's phosphate derailed. The shipper did not file a claim until fifteen months later.

Having reviewed the decisions from the various federal circuits, several prevailing themes emerge. First, the courts are almost unanimous in holding that, as a condition precedent to recovery, the shipper must file a written claim, although it need not be in a particular form. Some written communication must flow from the shipper to the carrier. A damage report or form filled out by the carrier's agent is insufficient. However, written documentation by the carrier of the nature and extent of damage, in conjunction with a communication from the shipper of an intention to hold the carrier responsible, that identifies the shipment, may suffice.

Second, the writing, which may consist of a combination of writings as explained above, must comply with the I.C.C. regulations at 49 C.F.R. § 1005.2. The writing must (1) identify the shipment, (2) assert the liability of the carrier, and (3) make claim for a specified or determinable amount of money. The federal circuits are split over the applicability of the regulations. However, it is the opinion of this court that the better-reasoned decisions, as well as the greater number, hold that the regulations apply. *See, e.g., Pathway Bellows*, 650 F.2d 900, and *General Electric*, 597 F. Supp. 1258. Further, the requirements of the regulations are consonant with the requirements of prior court decisions. In the *Blish Milling* case, the Supreme Court approved a telegram which, along with others, identified the shipment, asserted a claim and specified a determinable amount (the value of the lost flour at invoice price). *Blish Milling*, 241 U.S. at 198. The First Circuit, in the *Newtowne* case set out these minimum requirements: "a written document . . . indicating an intention on the shipper's part to claim reimbursement from the carrier . . . and sufficiently identifying the shipment . . ." *Newtowne*, 187 F.2d at 681.

The requirements of the regulations are reasonable in light of the policy underlying the federal statutes governing shippers. The applicable statute, 49 U.S.C. sect. 11707, was intended to: (1) hold carriers responsible

for damage they cause to transported goods, (2) encourage payment of claims without litigation, (3) facilitate prompt investigation of claims, and (4) prevent carriers from discriminating between shippers by paying claims of favored shippers while rejecting claims of others. The requirement of a writing standardizes and documents the claims procedure for all shippers, so that the carrier is prevented from discriminating. *See, Blish Milling*, 241 U.S. at 197. The remaining requirements facilitate prompt investigation and encourage settlement of claims. As to the last requirement, the claim need not specify a dollar amount. The amount must only be determinable. A claim that details damaged or missing items, describing the damage to each, is sufficient to allow the carrier to determine the amount of the loss.

A third principle that emerges from the cases concerns the relationship between actual notice and the doctrine of estoppel. The Supreme Court in a 1931 case left open the question of whether the doctrine of estoppel might be available under some circumstances to avoid the time limitation for filing claims. *Chesapeake & Ohio R. Co. v. Martin*, 283 U.S. 209, 222 (1931). Several of the circuit judges in subsequent cases have discussed the doctrine of estoppel. The most notable case is *Perini-North River Associates*, discussed above. In *Perini-North*, the court criticized the *Hopper* case for confusing actual knowledge with estoppel. *Perini-North*, 562 F.2d at 273. The court implied that if the *Hopper* decision had been based on estoppel, it would have been a well-reasoned decision. *Id. Perini-North* was an excellent estoppel case. The carrier's agent told the shipper, after the agent filled out a damage report, that they need not file a claim because an earlier damage report had been filed by another agent of the carrier. Then the carrier further deviated from normal practice by failing to send claim forms to the shipper. Finally, no mention was made of the claim during subsequent transactions between the parties. *Id.* at 271.

The doctrine of estoppel will not be invoked in very many cases. Some other courts that have considered the issue have found the proper circumstances lacking. *See, e.g., Intech*, 836 F.2d 672, 677, and *Pathway Bellows*, 630 F.2d 900. However, this court agrees with the reasoning in *Perini-North* that estoppel provides a narrow exception

in hard cases to the general rule that a written notice is required.

The court will now apply the foregoing principles to the facts of the present case. First, as to all items that were listed on the claim form submitted on June 2, 1987, there is no dispute that a valid claim was filed within the nine-month period. Settlement has been made for all of the damaged items except for the marble table, two Italian pots, and umbrella stand. United sent Ms. Booth a check for $2,300.00 for the repair of these items, which she declined to negotiate. Ms. Booth is entitled to judgment for $2,300.00 for these items. Negotiation of the check will constitute satisfaction of that portion of the judgment.

United denied Ms. Booth's claim for four missing oriental rugs included on the timely-filed claim. As the carrier has not offered any testimony, the court can only conclude that the rugs are missing and have the value ascribed to them by Ms. Booth. Thus, the plaintiff is entitled to judgment in the amount of $750.00 for the value of the missing rugs.

The true area of contention is the claim for items not included on the June 1, 1987, claim form but later itemized on the September 22, 1988, list, almost sixteen months after delivery. None of the cited cases have dealt with this fact situation, where there was a clearly valid claim as to some items, but no written notice as to other items, during the nine-month period. Based on the principles set forth above, which this court adopts, actual knowledge of the carrier does not substitute for the required written claim.

Further, there is no evidence here that the carrier had actual knowledge, as in the *Hopper* case, that items belonging to Ms. Booth were lost. The plaintiff's testimony and the defendant's internal documents establish that agents of the defendant knew, as of September 29, 1987, that Ms. Booth claimed to have lost four cartons of household goods in addition to the items claimed on the claim form. The actual knowledge relied upon in *Hopper* was knowledge of the circumstances of the actual loss, not knowledge that the shipper *claimed* a loss. The rationale of *Hopper* seems to be that it is unnecessary for the shipper to notify the carrier of the loss when the facts were peculiar-

ly within the carrier's knowledge and the carrier so admitted. In this case, the carrier has never admitted that any items were lost or stolen by its agents.

It is equally clear that oral notice within the claims period is insufficient. The plaintiff may only overcome the written claim requirement under two possible theories: (1) that oral notice of the missing items, in combination with timely written notice as to other items, is deemed sufficient under the plaintiff's interpretation of the recent Ninth Circuit cases, *Taisho* and *Culver*; or (2) that the defendant is estopped from relying on the condition precedent because of the acts of its agents.

This court is not convinced that the plaintiff's case here comes under the rationale of the Ninth Circuit cases. Those cases merely held that the formality of the writing could be relaxed in a case where the carrier has actual knowledge and conducts a full inquiry. *Taisho*, 762 F.2d at 1368. Here there was no written claim as to the four missing cartons, nor was the loss of those cartons noted in writing on the bill of lading. The carrier could, upon oral notice, conduct a search for the boxes. However, within the time period, the carrier had no idea what those boxes contained. Ms. Booth was in a better position to know what items were actually lost because many of the cartons were packed by her. The rationale of the Ninth Circuit cases is applicable only where there is some written notice, though informal, and the carrier, because of the circumstances, is in a position to investigate and remedy the damage. Here the carrier had no idea what the missing boxes contained, or the value of these items, until sixteen months after delivery. At that point, the carrier was informed that the value of the missing items almost doubled the amount of the claim that was previously presented.

In order to establish equitable estoppel, the plaintiff must prove, by clear, precise, and unequivocal evidence, representation, reliance, a change of position, and detriment. *Smith v. McGregor*, 237 Va. 66, 376 S.E.2d 60 (1989). Here the evidence shows that the defendant's agents helped Ms. Booth fill out the claim form and told her that further claims would be taken care of. However, the carrier did nothing to indicate that Ms. Booth would not be held to the contractual requirement of a written claim within nine months. This case is distinguishable from *Perini-North*,

where the carrier explicitly told the shipper that a claim form was unnecessary. The facts here are not sufficient to invoke the doctrine of estoppel.

## Conclusion

Based on the foregoing, the court is of the opinion that the shipper did not waive claims by signing the bill of lading at destination. Further, the plaintiff filed a timely claim as to the damaged items for which the defendant originally tendered a check in the amount of $2,300.00, as well as the four missing rugs valued at $750.00 total. The plaintiff's claim is barred by the nine-month claim provision as to the remaining items that were included on the list received by United on September 22, 1988.

Accordingly, the defendant's motion for summary judgment is granted only as to those items listed on the September 22, 1988, letter for which no written claim was filed during the nine-month claims period. The plaintiff is entitled to judgment in the amount of $3,050.00.