**WANG LABORATORIES, INC., Plaintiff,**

v.

**MITSUBISHI ELECTRONICS AMERICA, INC.,**
**Defendant.**

**No. CV 92 4698 JGD.**

United States District Court,
C.D. California.

Dec. 17, 1993.

J. Michael Hennigan, James W. Mercer, Dale J. Giali, Howrey & Simon, Los Angeles, CA, Thomas J. Newell, Watt, Tieder, Killian & Hoffar, McLean, VA, and Robert L. Green, Jr., Kenneth M. Reiss, Robert F. Ruyak, Thomas J. Scott, Jr., Diane B. Heller, Sheila R. Schreiber, Howrey & Simon, Washington, DC, for Wang Laboratories, Inc.

Mark E. Phelps, John W. Kozak, Leydig Volt & Mayer, Chicago, IL, Jennifer L. Woodward, Hugh Latimer, and Daniel I. Prywes, Pepper Hamilton & Scheetz, Washington, DC, Les J. Weinstein, Martin T. Trupiano, Graham & James, Los Angeles, CA, for Mitsubishi Elec. America Inc.

Ronald L. Johnston, Blanc Williams Johnston & Kronstadt, Los Angeles, CA, Joel E. Lutzker, David H. Kagan, Cindy M. Zelson, Amster Rothstein & Ebenstein, New York City, and Charles Daniel Ossola, Hutton & Williams, Washington, DC, for NMB Technologies Inc.

**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF AN ESTABLISHED ROYALTY RATE AS THE REASONABLE ROYALTY FOR THE SIMM PATENTS**

DAVIES, District Judge.

On September 27, 1993, the plaintiff's Motion for Partial Summary Judgment of an Established Royalty Rate as the Reasonable Royalty for the SIMM Patents came before the Court for argument. After reviewing the parties' written submissions and the oral arguments of counsel, the Court HEREBY DENIES the motion.

### FACTUAL AND PROCEDURAL BACKGROUND

This is a patent infringement action. On June 4, 1992, plaintiff Wang Laboratories, Inc. ("Wang") initiated this suit by filing a complaint in District Court for the Eastern District of Virginia. The complaint alleges that Mitsubishi Electronics America, Inc. ("MELA")[1] has infringed and continues to infringe two patents, U.S. Patent Nos. 4,656,605 ("the '605 patent") and 4,727,513 ("the '513 patent"), which disclose a highly successful computer memory device known as a Single In–Line Memory Module ("SIMM"). Wang claims that MELA manufactures, sells and uses infringing SIMMs in the United States and also imports infringing SIMMs manufactured by its Japanese parent company for sale and use in the United States. Based on these allegations, Wang seeks damages, preliminary and permanent injunctive relief, attorneys' fees and costs.

On or about July 17, 1992, upon the defendants' motion, Wang's patent action was transferred to the Central District of California pursuant to 28 U.S.C. § 1404. On August 6, 1992, the action was docketed by this Court (the "Wang v. MELA action").

Prior to the transfer of Wang's action, MELA and its parent company, Mitsubishi Electric Corporation ("MELCO"), jointly filed an action against Wang in this Court, captioned Mitsubishi Electric Corporation

---

1. Wang's complaint also names NMB Technologies, Inc. ("NMB") as a defendant. However, all claims between Wang and NMB have since been settled and dismissed.

*and Mitsubishi Electronics America, Inc. v. Wang Laboratories, Inc., et al.,* CV 92 3891 JGD (the *"MELCO v. Wang* action"). MELA and MELCO seek a declaration of non-infringement of the SIMM patents, and allege federal and state antitrust and unfair competition claims against Wang. MELA separately asserts a claim for tortious interference with prospective economic advantage. MELCO alleges independent patent infringement claims against Wang.

On August 18, 1992, Wang filed for bankruptcy under Chapter 11. In accord with the automatic bankruptcy stay, the Court stayed the *MELCO v. Wang* action on August 28, 1992. MELCO and MELA then moved the bankruptcy court to lift the automatic stay so they could prosecute to judgment their various claims against Wang. The bankruptcy court lifted the stay on MELA and MELCO's claims to the extent they relate to Wang's SIMM patents, but refused to lift the stay on MELCO's independent patent claims, observing that MELCO could file a separate action if it wished to pursue post-petition patent infringement claims against Wang.

On July 1, 1993, the Court denied Wang's motion for preliminary injunction, and Wang did not appeal the Court's order.

On July 20, 1993, the Court granted Wang's motion for partial consolidation of the instant action with the first through sixth causes of action in the *MELCO v. Wang* action, leaving only MELCO's independent patent infringement claims against Wang to be prosecuted separately. Also on July 20, the Court granted Wang's motion for separate trials of its patent infringement claims and MELA's affirmative antitrust and tort claims, but declined to stay discovery on MELA's affirmative claims.

On September 29, 1993, the parties filed a Stipulation Re Non–Infringement of "Lateral" and "3 Package" SIMMs and Withdrawal of Summary Judgment Motion. The parties thereby agreed that only one configuration of the allegedly infringing SIMMs, the "Classic" SIMM, remains at issue in Wang's infringement action. Trial with regard to infringement by MELA's Classic SIMMs is now set for April 26, 1994.

## DISCUSSION

In the instant motion, Wang requests judgment in its favor that there is a three percent established royalty rate for licenses of its SIMM patents, and that the infringement damages owed by MELA, if liability is found, should be calculated according to this rate.

### A. Legal Framework

#### 1. calculation of infringement damages

█ Recovery for patent infringement is controlled by 35 U.S.C. § 284, which provides:

> Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court.

There are two methods for calculating damages under § 284. *Hanson v. Alpine Valley Ski Area, Inc.,* 718 F.2d 1075, 1078 (Fed.Cir. 1983). If circumstances permit, the courts will award actual damages in the form of lost profits. If not, courts calculate a reasonable royalty based upon prior licenses (the "established royalty rate"), or, if none exist, a hypothetical rate premised upon an arm's length transaction between willing parties. *Id.*

Over a century ago, the Supreme Court spelled out the factors for determining the existence of an established royalty rate:

> [I]t must be paid by such a number of persons as to indicate a general acquiescence in its reasonableness by those who have occasion to use the invention; and it must be uniform at the places where licenses are issued.

*Rude v. Wescott,* 130 U.S. 152, 165, 9 S.Ct. 463, 468, 32 L.Ed. 888 (1889). The *Rude* standard continues to be the starting point for the established royalty rate analysis.

#### 2. the summary judgment standard

Upon a showing that there is no genuine issue of material fact as to particular claims, the Court may grant summary judgment in the plaintiff's favor upon all or any part thereof. *See* W. Schwarzer, A.W. Tashima,

J. Wagstaffe, Federal Civil Procedure Before Trial at § 14:33 (citing Fed.R.Civ.Pro. 56(a), (b)). The standards and procedures are the same as for summary judgment of a claim. *Id.*

Rule 56(c) of the Federal Rules of Civil Procedure provides that a court shall grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. Rule 56(c). Whether a fact is material is determined by looking to the substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Facts are deemed "material" if a dispute over them "might affect the outcome of the suit under the governing law...." *Id.*

The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *Id.* at 256, 106 S.Ct. at 2514. Rule 56(e) provides that "[w]hen a motion for summary judgment is made and supported as provided for in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed.R.Civ.P. Rule 56(e).

As the Supreme Court explained in *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986):

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."

477 U.S. at 586–87, 106 S.Ct. at 1356. A "genuine issue" of material fact exists only when the nonmoving party makes a sufficient showing to establish an essential element to that party's case, and on which that party would bear the burden of proof at trial. *Celotex Corporation v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–14 (citing *Adickes v. S.H. Kress and Company,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)).

"Summary judgment is as appropriate in a patent case as in any other." *Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.,* 731 F.2d 831, 835 (Fed.Cir. 1984). Thus, where no genuine issue of material fact exists on the question of infringement, "the Court should utilize the salutary procedure of Fed.R.Civ.Pro. Rule 56 to avoid unnecessary expense to the parties and wasteful utilization of the jury process and judicial resources." *Id.; see also Johnston v. IVAC Corp.,* 885 F.2d 1574 (1989) (affirming summary judgment of noninfringement for defendant).

**B. Analysis**

■ Wang seeks to establish a royalty rate based on license agreements entered into over the past several years with several dozen manufacturers and sellers of SIMMs. These agreements, with minor exception, were formed after Wang had commenced legal action to enforce its patent rights.[2] MELA argues that license agreements agreed to under the threat of litigation are "disqualified" from established royalty rate analysis under a venerable line of cases.

2. Wang sent various manufacturers notices of infringement after its SIMM design was patented in 1986 and 1987. However, with the exception of a March 1991 license issued to Motorola, which called for one-percent royalty payments for SIMMs made or sold after 1991, Wang did not obtain a royalty-bearing license until after August 1991, when it obtained a judgment of infringement in a suit filed against Toshiba and NEC based upon a royalty rate of 2.75 percent. The forty-odd royalty-bearing licenses now held by Wang were entered into after the Toshiba-NEC judgment. MELA's account of Wang's "hyper-litigious 'licensing program'" can be found on pages 7 through 11 of its opposition. Wang does not dispute this chronology in its reply.

It is a century-old rule that royalties paid to avoid litigation are not a reliable indicator of the value of a patent, and should therefore be disregarded when determining reasonable royalty rates. This is because royalties paid under threat of suit may reflect the licensee's desire to avoid the risk and expense of litigation. *See Rude,* 130 U.S. at 164, 9 S.Ct. at 468; *Cornely v. Marckwald,* 131 U.S. 159, 161, 9 S.Ct. 744, 745, 33 L.Ed. 117 (1889); *Faulkner v. Gibbs,* 199 F.2d 635, 638 (9th Cir.1952). Hence in *Cornely* the Court held that ten licensing agreements did not prove an established royalty because all were formed in settlement of litigation. *Cornely,* 131 U.S. at 160–61, 9 S.Ct. at 744–45.

Wang argues that the exclusion of licenses potentially influenced by litigation is "no longer viable." Motion at 13. This is so because, at the time *Rude* and *Cornely* were decided, "litigation was not the generally accepted, prevailing method of resolving disputes as it is now." *Id.* Wang cites three cases in support of its position: *Studiengesellschaft Kohle, m.b.H. v. Dart Industries, Inc.,* 862 F.2d 1564, 1570–73 (Fed.Cir.1988); *Devex Corp. v. GM,* 667 F.2d 347, 361–62 (3rd Cir.1981), *aff'd,* 461 U.S. 648, 103 S.Ct. 2058, 76 L.Ed.2d 211 (1983); and *Pitcairn v. United States,* 212 Ct.Cl. 168, 547 F.2d 1106, 1116–19 (1976), *cert. denied,* 434 U.S. 1051, 98 S.Ct. 903, 54 L.Ed.2d 804 (1978). However, these cases do not undermine the traditional rule.

In *Dart Industries,* the district court considered a license entered into as part of a settlement agreement as probative of the reasonable royalty rate. In upholding the district court, the Federal Circuit affirmed the basic principle of *Rude* and its progeny, but distinguished the case at bar factually because "[t]here was no 'threat' of litigation against Phillips [the prior licensee] in 1974; nor was the settlement negotiated 'against a backdrop of continuing litigation' on validity and infringement." 862 F.2d at 1572 (citations omitted). This was so because the Phillips settlement came after a finding of patent validity and infringement and before an accounting. Hence, Phillips had already incurred the legal expenses of defending the infringement action, and the rate it ac-

quiesced to could not be said to include a premium for litigation avoidance. Further, in *Dart Industries,* the prior license was used to establish a reasonable royalty under the hypothetical rate analysis, not the established royalty rate analysis.

The *Pitcairn* case is also inapposite. There, the court held that a prior license agreement could be used as evidence of an established royalty rate after explicitly finding the absence of record evidence that the license was the product of the licensee's desire to avoid litigation. *Pitcairn,* 547 F.2d at 1116–17.

*Devex* is more favorable to Wang's position, though not directly on point. In that case, the Third Circuit affirmed a district court ruling that based the reasonable royalty rate on an industry-wide licensing offer by the patentee. 667 F.2d at 361–62. The *Devex* court speculated that the risks and costs of litigation may have lowered the rate offered but noted that plaintiffs at the time of the offer had just won a major validity victory in the Seventh Circuit. *Id.* at 362. The holding of *Devex* was narrow: "an actual license offer may, if the facts permit, be a factor in assessing a reasonable royalty. . . ." *Id.*

■ In sum, none of the three cases cited by Wang strongly undermine the basic principle, first enunciated in *Rude,* that royalty rates agreed to in anticipation of litigation cannot be relied upon to prove a reasonable royalty rate. On the other hand, several recent cases, in addition to *Dart Industries* itself, echo the rule of exclusion. *See Hanson,* 718 F.2d at 1078–79; *Deere & Co. v. International Harvester Co.,* 710 F.2d 1551, 1557 (Fed.Cir.1983); *Panduit Corp. v. Stahlin Bros. Fibre Works,* 575 F.2d 1152, 1164, n. 11 (6th Cir.1978).

Even if there are instances in which license agreements influenced by the threat of litigation may be deemed probative of an established royalty rate, this case would seem especially appropriate for application of the general rule. As MELA summarizes: "over the last two years, Wang has brought no less than 12 separate lawsuits and an ITC [International Trade Commission] proceeding involving 16 respondents, most seeking

preliminary injunctive relief and accompanied by wide press coverage and specific threats of additional litigation against others." Opposition at 13–14.

Since the only evidence Wang offers in support of an established royalty rate of three percent must be excluded under *Rude* and its progeny, it has not proven an established royalty rate as a matter of law. Therefore, Wang's motion for summary judgment must be denied.[3]

IT IS SO ORDERED.

Gregory P. Stone, Ted Dane, Munger, Tolles & Olson, Los Angeles, CA, for plaintiff Westinghouse Elec. Corp.

George A. Oakes, Alan H. Stanfill, Throckmorton, Beckstrom & Oakes, Pasadena, CA, for defendants General Circuit Breaker & Elec. Supply, Inc.; Panelboard Specialties Wholesale Elec., Inc., Xavier Contreras, and Jaime A. Contreras.

J. Scott Bennett, Law Offices of J. Scott Bennett, Lake Elsinore, CA, for defendants Panelboard Specialties Wholesale Elec., Inc., and Jaime A. Contreras.

---

**3.** The Court does not reach the question of whether the rates presently paid by licensees of

the Wang SIMM are sufficiently uniform to amount to an established royalty rate.