**EDDIE BAUER, INC., and Industrial Risk Insurers, an Unincorporated Association, Plaintiff,**

v.

**FOCUS TRANSPORTATION SERVICES d/b/a Baker Motor Express, an Illinois Corporation; Central Ohio Shippers, Coordinate Corporation, a Corporation, and Gully Transportation, a Corporation, Defendants.**

No. 94 C 1726.

United States District Court, N.D. Illinois, Eastern Division.

April 13, 1995.

James Bernard Glennon, Dale F. Weigand, Clausen, Miller, Gorman, Caffrey & Witous, P.C., Chicago, IL, for plaintiffs.

Richard J. Hickey, Daniel Steven Kaplan, Wildman, Harrold, Allen & Dixon, Chicago, IL, for defendant Focus Transp. Services.

Lew Reuben Charles Bricker, Zacarias R. Chacon, Jr., Querrey & Harrow, Ltd., Leonard Stewart Shifflett, Timothy Scott Harris, Wilson & McIlvaine, Chicago, IL, Timothy C. Jochim, Walter & Haverfield, Columbus, OH, for defendant Central Ohio Shippers Coordinate Corp.

Stephen C. Veltman, Pretzel & Stouffer, Chtd., Chicago, IL, for defendant Gully Transp.

## MEMORANDUM OPINION AND ORDER

GETTLEMAN, District Judge.

Plaintiffs Eddie Bauer, Inc. and its insurer Industrial Risk Insurers (together, "Eddie Bauer"), bring this three count damages action against defendants Focus Transportation

Services d/b/a Baker Motor Express, Inc. ("Baker Motor") (Count I), Central Ohio Shippers, Coordinate Corporation ("Central Ohio") (Count II), and Gully Transportation ("Gully") (Count III), under the Carmack Amendment, 49 U.S.C. § 11707.[1] Before the court are multiple motions for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) and multiple motions for summary judgment pursuant to Fed.R.Civ.P. 56.[2] For the reasons stated below, the Court denies all of the motions for judgment on the pleadings, grants Eddie Bauer's motion for summary judgment against Baker Motor, and grants Central Ohio and Gully's motions for summary judgment against Eddie Bauer.

### Facts [3]

During the time period relevant to the events alleged in the complaint Eddie Bauer (the "shipper") had in effect an ongoing "shipper-carrier" contract with Baker Motor (a "carrier") to transport merchandise to Eddie Bauer stores on bills of lading issued to Eddie Bauer at the time of each shipment. Eddie Bauer also had in effect a "shipper-carrier" contract with Central Ohio (a carrier) for Central Ohio to transport goods from Eddie Bauer's distribution center in Columbus, Ohio to various points authorized by Eddie Bauer. Central Ohio had in effect an ongoing "Agreement for Motor Carrier Transportation Services" with Gully.

On March 20, 1992, Eddie Bauer called for Central Ohio to pick up merchandise from Eddie Bauer's distribution center in Columbus, Ohio. Eddie Bauer transferred the merchandise to Central Ohio "in a good and undamaged condition in Ohio." (Complaint ¶ 6.) Eddie Bauer issued Central Ohio a bill of lading that provided: "FROM: COS (Central Ohio), 1580 Georgesville Rd., Columbus, OH 43228;" "TO: Baker Motor Express, 5355 Walnut St. Downer's Grove, IL 60515." Central Ohio then contacted Gully to transport the goods from Central Ohio's facility to Baker Motor's facility in Downer's Grove. In accordance with the bill of lading, later that day, Gully picked up the merchandise and Central Ohio issued Gully a new bill of lading providing for shipment to Baker Motor at the same address listed on Eddie Bauer's bill of lading.

On Saturday, March 21, 1992, Michael Watt ("Watt"), a Gully driver, dropped the trailer of Eddie Bauer goods at the terminal in Baker Motor's facility. Watt spotted [4] the trailer at Baker Motor's terminal dock door number 2, leaving the seal to the trailer doors intact. No Baker Motor representative was present at the time the trailer was spotted at Baker Motor's facility. Watt filled out a Gully delivery ticket and put the receipt into Baker Motor's mailbox.

Later that day, upon arriving at Baker Motor's facility, Scott Bertrand, Baker Motor's Vice President and General Manager

1. 49 U.S.C. § 11707(a)(1) states in relevant part:

   A common carrier ... subject to the jurisdiction of the Interstate Commerce Commission ... shall issue a receipt or bill of lading for property in receipt of transportation ... The carrier ... and any other carrier that delivers the property and is providing transportation or service subject to the jurisdiction of the Commission ... are liable to the person entitled under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property caused by (1) the receiving carrier, (2) the delivering carrier, or (3) another carrier over whose line or route the property is transported in the United States.

2. Eddie Bauer filed motions for judgment on the pleadings against Gully and Central Ohio, and a motion for summary judgment against Baker Motor. Gully and Central have filed motions for summary judgment against plaintiff, and Central

had previously filed a motion for judgment on the pleadings against Eddie Bauer. In accordance with Rule 12(c), motions for judgment on the pleadings shall be treated as summary judgment motions and disposed of as provided in Rule 56, if all parties are given reasonable opportunity to present all material made pertinent to such a motion. Each of the parties involved in the motions for judgment on the pleadings are also parties to the summary judgment motions. Therefore, the court will address all of the motions in accordance with Rule 56. Accordingly, the court denies Eddie Bauer's and Central Ohio's motions for judgment on the pleadings as moot.

3. These uncontested facts are taken from the parties' pleadings and the depositions and documents attached to the summary judgment briefs.

4. "Spotting" a shipment means bringing a trailer up to a dock door, unhooking it from the tractor, and leaving the trailer at the facility.

("Bertrand"), saw the trailer, checked to make certain that the seal[5] was still in place, looked for the paperwork in the mailbox and went inside to attempt to call Gully and Central Ohio. Bertrand never reached anyone at either Gully or Central Ohio. Before leaving Baker Motor that evening, noting that the seal was still intact, Bertrand put a pinlock[6] on the trailer to help secure the trailer from being moved.

On March 22, 1992, the trailer containing Eddie Bauer's merchandise was stolen from the Baker Motor terminal. The trailer was recovered on March 25, 1992. Eddie Bauer alleges that merchandise was missing from the returned trailer, and that it sustained $95,095.93 in damages.

After the loss, Eddie Bauer filed a written claim with Baker Motor (the "Damage Claim"). In July, 1992, Baker Motor, through its insurer, denied coverage for the loss. In a letter dated December 16, 1992, Sam Shaw, Assistant Corporation Traffic Manager for Eddie Bauer, sent Central Ohio and Gully the following correspondence:

> Enclosed is a copy of a loss and damage claim that I have filed with Baker Motor Express. His insurance company has requested that I also file this claim with you. Would you please formally decline this claim and return same to me ASAP.

In its complaint, Eddie Bauer asserts that this letter, with an accompanying copy of the Damage Claim, constituted notice of the loss to both Central Ohio and Gully. In a letter from Central Ohio to Eddie Bauer regarding the loss, dated December 23, 1992, Central Ohio wrote:

> Since we conformed to Bakers' request, performed the loading and the line haul and they had the goods in their custody, we respectfully decline your claim.

On January 25, 1993, Gully denied Eddie Bauer's claim, stating Gully was not liable for the loss.

On March 18, 1994, Eddie Bauer filed a three-Count complaint against Baker Motor,

Central Ohio, and Gully for the damages from the events in March 1992. After the pleadings were closed, Eddie Bauer filed timely motions for judgment on the pleadings against Central Ohio and Gully. Subsequent to these motions, Eddie Bauer filed a motion for summary judgment against Baker Motor, and Gully and Central Ohio filed motions for summary judgment against Eddie Bauer.

### Summary Judgment

Under Fed.R.Civ.P. 56(c), a court should grant a summary judgement motion if "there is no genuine issue of material fact and ... the moving party is entitled to judgment as a matter of law." The burden is on the moving party to identify portions of the pleadings, answers to interrogatories, and affidavits which demonstrate an absence of a genuine issue of material fact. *Id.; Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(c). When reviewing a summary judgement motion, the court must read the facts in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

Where the party opposing summary judgment bears the burden of proof on a dispositive issue, it must offer specific evidence demonstrating a factual basis on which it is entitled to relief. *Id.,* 477 U.S. at 256, 106 S.Ct. at 2514. The party may not rely on conclusory allegations or speculation alone to oppose summary judgment. *Anderson v. Stauffer Chemical Co.,* 965 F.2d 397, 402 (7th Cir.1992). In deciding a motion for summary judgment, the district court has "one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir.1994).

---

**5.** A "seal" is a long, rectangular, strap-like piece of metal with a number stamped on it. When Bertrand last checked the trailer the seal was still in place.

**6.** A pin lock, a large metal collar that slides over the pin of a trailer, is used to keep a tractor from hooking up to a trailer. The pin lock is secured with a key lock.

■ Before discussing the merits of the case, it is important in these litigious times to discuss the parties' critical procedural errors. Local General Rules 12(M) and 12(N) of this district require both the movant and the party opposing a Rule 56 motion to file a statement of uncontested facts, listing each fact in a separate numbered paragraph, with a citation to the affidavit or other supporting materials that the party relied upon, as well as a response to the opposing party's statement of facts. The failure to comply with the local rules is not merely a "harmless technicality," but can be a "fatal" mistake. *Waldridge,* 24 F.3d at 923 (Local Rule 12(M) and 12(N) statements are "roadmaps, and without them the court should not have to proceed further, regardless of how readily it might be able to distill the relevant information from the record on its own").

While the temptation is great to deny all of the summary judgment motions on this basis, the multitude of motions already filed, along with concern over wasted paper and time provides this court with the incentive to ferret out the facts in this case and judge the instant motions on the merits. The parties are admonished to read and learn the local rules, and pay strict attention to the requirements the next time they file a motion in this court.

### Recovery Under The Carmack Amendment

■ Eddie Bauer asserts that each of the defendants is liable for the loss of its goods under the Carmack Amendment because the final destination of the goods were designated as Eddie Bauer stores and the merchandise was stolen from the trailer somewhere en route. Under the Carmack Amendment, for a shipper to recover damages to a shipment from a carrier, the burden is on the shipper to establish a *prima facie* case. Eddie Bauer, the shipper, must prove: (1) the goods in question had been delivered to the carrier in good condition; (2) the goods had arrived at the final destination in a damaged or diminished condition; and (3) a specific amount of damages. *Missouri Pac. R. Co. v. Elmore and Stahl,* 377 U.S. 134, 84 S.Ct. 1142, 12 L.Ed.2d 194 (1964); *S.C. Johnson &*

*Son, Inc. v. Louisville & Nashville R.R.,* 695 F.2d 253, 256 (7th Cir.1982).

■ If the shipper can prove its *prima facie* case, the burden shifts to the carrier to show both that it was free from negligence and that the damage was caused by: (1) an act of God; (2) an act of the public enemy; (3) an act of the shipper; (4) an act of the public authority; or, (5) the inherent nature or vice of the goods.[7] *Missouri Pac. R. Co.,* 377 U.S. at 137, 84 S.Ct. at 1144; *S.C. Johnson & Sons,* 695 F.2d at 256. Judgment cannot be rendered against the carrier until the shipper has proved both its *prima facie* case, and the carrier has failed to meet its burden of proof that it was free from negligence and that the damage was due to one of the excepted causes. *Id.*

■ The Carmack Amendment was enacted to "relieve shippers of the burden of searching out a particular negligent carrier from among the often numerous carriers handling an interstate shipment of goods." *S.C. Johnson & Son,* 695 F.2d at 253. The parties do not dispute that Eddie Bauer has fulfilled the first and third elements of the *prima facie* test. As to the second element, the two issues the court must address are: (1) whether the shipment was considered one shipment or two shipments under the Carmack Amendment; and (2) whether the goods were "delivered" to Baker Motor. The findings on these two issues will govern which party, if any, is liable for the stolen merchandise.

■ A carrier's liability for the loss of goods shipped through interstate commerce extinguishes upon delivery. *Intech, Inc. v. Consolidated Freightways, Inc.,* 836 F.2d 672, 674 (1st Cir.1987); *Tokio Marine and Fire Insurance Co., Ltd. v. Amato Motors, Inc.,* 871 F.Supp. 1010, 1014 (N.D.Ill.1994). Therefore if the shipment was broken down into two legs, the first leg being the shipment from Eddie Bauer in Ohio to Baker Motor, and the goods were delivered to Baker Motor in good condition, then Central Ohio and Gully are not liable to Eddie Bauer under the Carmack Amendment.

---

7. None of the parties have asserted that any of these defenses are applicable in the instant case.

Whether the transportation of the Eddie Bauer merchandise should be characterized as one or two trips is a question of fact. *S.C. Johnson & Son*, 695 F.2d at 257. An examination of the relevant facts in this case reveals that the shipment is properly divided into two trips. Eddie Bauer had separate contracts and arrangements with Central Ohio [8] and Baker Motor. Central Ohio had instructions to transport cartons of Eddie Bauer's merchandise from it's facility in Ohio, to Baker Motor's facility in Illinois. Baker Motor was then obligated to separate the load and distribute the goods to Eddie Bauer's retail stores as specified on bills of lading supplied by Eddie Bauer.[9] The bill of lading issued from Central Ohio to Eddie Bauer listed Baker Motor's facility in Downer's Grove as the "Final Stop." These facts support the finding that the journey from Eddie Bauer to its retail stores consisted of two separate deliveries. See, *Id.* 695 F.2d at 257; *Intech, Inc.*, 836 F.2d at 674 (the terms of the delivery are defined by the bill of lading). Therefore, under the Carmack Amendment, Central Ohio and Gully are liable to Eddie Bauer for any damage to the goods in transport from Ohio to Baker Motor's facility in Downers Grove, and Baker Motor is liable for damages to the goods that occur from the delivery to its facility to the delivery to the designated Eddie Bauer retail stores.

### What Constitutes "Delivery"

■ The critical issue remaining before the court is whether Watt's actions constituted "delivery" to Baker Motor. Central Ohio and Gully argue that they are not liable to Eddie Bauer because its merchandise was stolen after it was delivered to Baker Motor. Baker Motor asserts that Gully's spotting of the merchandise at Baker Motor's facility does not constitute "delivery."

■ The intention of the parties defines what constitutes the scope of delivery. *Amato Motors, Inc.*, 871 F.Supp. at 1014; *Intech, Inc. v. Consolidated Freightways*, 836 F.2d 672, 674–75 (1st Cir., 1987). Subject to the intent of the parties, delivery occurs when one party surrenders, and the other party accepts, possession, custody, and control of the goods involved. *Id;* *Illinois Central R.R. v. Moore*, 228 F.2d 873, 877 (6th Cir., 1956).

Central Ohio and Gully assert that Gully delivered Eddie Bauer's merchandise to Baker Motor "consistent with the normal business practices" of Central Ohio and Baker Motor, and that Baker Motor took actual possession and control of the trailer when Bertrand secured the trailer with one of Baker Motor's pinlocks.

Baker Motor argues that there was not proper delivery, asserting that Bertrand testified in his deposition that he had given Vicki Vancil ("Vancil"), a shipping clerk with Central Ohio, delivery instructions to bring the truckload to Baker Motor's facility Monday morning at 5:00 a.m., and that the trailer *was not* to be left unattended at the Baker facility over the weekend. (Emphasis in Baker Motor's brief.) The actual testimony from Bertrand's deposition (at 88–90) reads:

Q. Now, with respect to the shipment in question in this litigation, when did you first have personal knowledge that a shipment was going to be leaving Central Ohio Shippers on about the 20th of March of 1992?

A. We would have received a phone call, did receive a phone call. Was the 20th of March a Friday?

Q. 10th of March was a Friday.

A. Okay. We received a phone call mid to late morning indicating that COS [Central Ohio] would be pulling the load out of Eddie Bauer today, which was that Friday, with the question asked to us when do you want it. We responded next Monday morning, 5:00 a.m.

. . . . .

Q. Did you have any discussion with that person who called from COS with respect one way or the other whether

---

8. Gully was hired by Central Ohio and is jointly liable under its contract with plaintiff.

9. These papers were alleged to have been inside the trailer and were missing when the trailer was finally returned.

the drive was to be delivering this trailer on Saturday the 21st?

A. No.

Q. Not discussed at all?

A. No.

Q. Any discussion whatsoever about delivery on Sunday the 22nd?

A. No.

Q. The only conversation regarding delivery was delivery on Monday the 23rd?

A. At 5:00 a.m., correct.

Q. And that was repeated or that was understood from your prior course of dealings?

A. Every time we would restate the day and time.

Q. Was there any discussion in that telephone conversation regarding dropping a trailer off at a time when no one was present at Baker Motor Express?

A. No.

Q. What else, if anything, was discussed in that conversation?

A. Nothing else that I recall.

Baker Motor insists that its agents never agreed to allow a driver to leave a trailer with Eddie Bauer freight unattended at Baker Motor's facility. Further, Baker Motor asserts that every time Central Ohio left a trailer unattended at Baker Motor's facility in the past, an agent attempted to tell either Central Ohio or Eddie Bauer that Central Ohio should not just leave a trailer at its facility when there was no Baker Motor employee to accept the delivery. Therefore, Baker Motor argues that having left the trailer at Baker Motor unattended did not constitute "delivery" under the arrangements

with Eddie Bauer and the course of dealing with Central Ohio.

While Baker Motor repeatedly asserts that the spotting of the trailer in Baker Motor's facility cannot constitute delivery, "[c]hanting a mantra is no substitute for arguing the evidence." *Tokio Marine and Fire Insurance Company, Ltd. v. Amato Motors, Inc.,* 871 F.Supp. 1010, 1014 (N.D.Ill.1994). During the course of Central Ohio and Baker Motor's past dealings, at least a dozen times, Central Ohio shipments had been spotted and left at Baker Motor's facility when no Baker Motor employee was there. (Bertrand Dep. 84–85.) Each time this occurred, Bertrand would check the seal to see if the seal was still intact, locate the delivery bills, and unload the trailer when the rest of the crews came in to work. (*Id.* at 79.) According to Bertrand, even though a trailer was spotted without a Baker Motor employee present, Baker Motor would always unload the trailer and "work the freight." The shipment was never refused. (*Id.*)

Generally, the spotting of a shipment constitutes delivery regardless of whether the goods are accepted or rejected, if nothing remains to be done by the carrier in order to effectuate a delivery. *Intech, Inc.,* 836 F.2d at 674. Central Ohio's bill of lading does not call for Gully to assist in the unloading of the trailer. There is no evidence, from either the bill of lading[10] or the prior course of dealings between Central Ohio, Gully and Baker Motor, that Gully was required to perform anything beyond spotting the trailer to effectuate delivery. As noted from Bertrand's testimony, Baker Motor never rejected a shipment when it was left without anyone to physically accept delivery at the time it was spotted in Baker Motor's facility.

Moreover, in addition to the parties' previous course of dealing, with respect to the

---

**10.** Baker Motor argues that Central Ohio's bill of lading calls for the delivery driver to remain with the shipment until it is fully unloaded. The bottom of the bill of lading issued from Central Ohio to Gully states:

"Count the pieces you deliver to each location. Do not leave your trailer unattended while making a delivery."

This bill of lading is a contract between Central Ohio and Gully. The directions in the bill of lading do not constitute the agreement or a

course of dealing between Central Ohio (and Gully) and Baker Motor. As discussed below, based on its previous course of dealing with Baker Motor, Central Ohio's "delivery" was accomplished once it spotted its trailer in Baker Motor's facility and Baker Motor exercised control over the trailer. Therefore, since delivery had occurred, the directions not to leave the trailer unattended *while making a delivery* no longer applied.

Eddie Bauer shipment in question, Baker Motor's general manager, Bertrand, actually accepted responsibility for the shipment when he placed the pinlock on the trailer. By that action, Baker Motor prevented Gully or any honest party from asserting control over the shipment. Only Baker Motor had the ability to do so; it alone had the key to the pinlock. The court is sympathetic to Baker Motor where as here its safety precaution actions (warding against potential theft) contribute to the conclusion that Gully had "delivered" Eddie Bauer's merchandise to Baker Motor. Perhaps there were other steps Baker Motor could have taken to protect the shipment, such as posting a guard or moving the trailer to a secured facility. Its decision to place the pinlock on the trailer, however well-motivated, gave Baker Motor exclusive control over the shipment and leads inescapably to the conclusion, based on the uncontested evidence, that Gully delivered the goods to Baker Motor's facility in an undamaged condition.

**Addressing Each of the Parties' Motions**

Regarding Central Ohio and Gully's motions for summary judgment, the court must view the evidence in a light most favorable to Eddie Bauer. In order to prevail in their motions for summary judgment, Central Ohio and Gully must prove that there is no evidence that would reasonably permit a finder of fact to find that Eddie Bauer has established its *prima facie* case: (1) the goods in question had been delivered to Central Ohio in good condition; (2) the goods had arrived at Baker Motor in a damaged or diminished condition; and (3) the damages can be specified. See, *S.C. Johnson & Son,* 695 F.2d at 256. The uncontroverted evidence demonstrates that Gully spotted the trailer with Eddie Bauer's merchandise at Baker Motor's facility against dock door number 2. Baker Motor's Bertrand checked the trailer and found that the metal seal was still intact and then placed a pinlock over the trailer hitch to prevent a tractor from hooking up with the trailer. Viewing the uncontroverted evidence before it in the light most favorable to Eddie Bauer, the court finds that there is no genuine issue of fact that Baker Motor was the final destination for the carriage contract between Eddie Bauer and Central Ohio (and Gully), and that Eddie Bauer fails to present evidence that could convince a jury that it satisfies the second element of its *prima facie* case against Central Ohio and Gully under the Carmack Amendment. Accordingly, the court grants Central Ohio and Gully's motions for summary judgment against Eddie Bauer.

Considering Eddie Bauer's motion for summary judgment against Baker Motor, the court must view the evidence in a light most favorable to Baker Motor. From the evidence before it, the court finds that Eddie Bauer has established a *prima facie* case against Baker Motor, that Baker Motor has failed to present any evidence that it was free from negligence, and that the loss was due to an exempted defense. (See n. 7 above.) The trailer was delivered to Baker Motor in good condition, the goods arrived at their final destination in a diminished condition, and the damages can be specified. Accordingly, the court grants Eddie Bauer's motion for summary judgment against Baker Motor.

**Conclusion**

For the reasons stated above, having found that there are no genuine triable issues of fact that there were two separate legs to the instant shipment, that Central Ohio and Gully delivered the goods to Baker Motor undamaged, and that Baker Motor has failed to prove that it has any defense to liability for the loss of the Eddie Bauer merchandise, the court grants Central Ohio and Gully's motions for summary judgement against Eddie Bauer, and grants Eddie Bauer's motion for summary judgment against Baker Motor in the amount of $95,095.93.