129 F.3d 960
 TOKIO MARINE AND FIRE INSURANCE COMPANY, LIMITED, and
Chiyoda Fire and Marine Insurance Company,
Limited, as Subrogee for Matsushita
Electric Corporation of
America, Plaintiffs-Appellants,
v.
CHICAGO & NORTHWESTERN TRANSPORTATION COMPANY and American
President Intermodal Company, Limited, Defendants-Appellees.
 No. 97-1071.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 26, 1997.
Decided Nov. 20, 1997.
 
 Dennis Minichello (argued), Keck, Mahin & Cate, Chicago, IL, for Plaintiffs-Appellants.
 Mark H. Shumate, Jr., Union Pacific Railroad Co., Law Dept., Chicago, IL, for Defendant-Appellee, Chicago & Northwestern Transp. Co.
 Gus Svolos (argued), Chicago, IL, for Defendant-Appellee, American President Intermodal Co., Ltd.
 Dennis Minichello, Keck, Mahin & Cate, Chicago, Il, appellants, pro se.
 Before CUMMINGS, COFFEY and EVANS, Circuit Judges.
 CUMMINGS, Circuit Judge.
 
 
 1
 Tokio Marine and Fire Insurance Company, Limited (Tokio) and Chiyoda Fire and Marine Insurance Company, Limited (Chiyoda) sued to recover $490,311.41 for loss of goods during a shipment from Tacoma, Washington to a warehouse in Arlington Heights, Illinois. Defendants were Chicago & Northwestern Transportation Company (C & NW), American President Intermodal Company, Limited (API), Amato Motors, Inc. (Amato) and Raven Transport, Inc. (Raven). The plaintiffs are Japanese corporations. Tokio has its principal place of business in New York City and Chiyoda in Japan.
 
 
 2
 According to the third amended complaint, Tokio issued a policy of insurance covering a shipment of Panasonic goods from Japan to Arlington Heights, Illinois for the account of Matsushita Electric Corporation (Matsushita) of Secaucus, New Jersey. Chiyoda also had a contractual obligation to insure the same shipment of Panasonic goods but is subrogee to the rights of recovery of Matsushita because Chiyoda has paid Matsushita for the losses it sustained.
 
 
 3
 In early December 1989 Matsushita contracted with API and Amato to transport Panasonic goods from Tacoma, Washington to Arlington Heights, Illinois. API arranged with the Union Pacific Railroad Company and the C & NW to rent or lease Union Pacific and C & NW railroad tracks, engines, and employees for the shipment. C & NW was to handle the interchange of the Panasonic goods when they arrived at the C & NW railhead in Chicago. Then Amato was to provide transportation from the C & NW railhead to Panasonic's Arlington Heights, Illinois warehouse.
 
 
 4
 According to the final complaint, the containers left Tacoma on or about December 12, 1989 and arrived at the C & NW Chicago railhead on the morning of December 16, 1989. On December 15, C & NW notified defendant Amato that the containers would be made available to Amato on December 16 for delivery to the Arlington Heights warehouse of Panasonic.
 
 
 5
 Amato itself was unavailable to deliver the containers from the C & NW railhead to the Panasonic warehouse and subcontracted with defendant Raven on December 15 to deliver them to Panasonic. Amato gave Raven the container numbers and special pickup numbers to obtain the release of the containers at the C & NW railhead.
 
 
 6
 At 5:30 a.m. on December 18, Raven tractor # 105 arrived at the railhead and C & NW released one of the four containers to the trailer driver, who gave the name Wilson. Half an hour later four other Raven tractors and drivers arrived to pick up all four containers but found that one was already missing from the C & NW railhead. Subsequently, one of the Raven drivers contacted his supervisor and was notified Raven had no driver named Wilson and that tractor # 105 was missing from Raven's yard. The Panasonic goods contained in the missing container were never delivered to the Panasonic warehouse, causing Matsushita $490,311.41 in damages.
 
 
 7
 Subsequently, Tokio paid Matsushita $452,117.41 and Chiyoda paid Matsushita $38,194 for the loss of the Panasonic goods so that Tokio and Chiyoda are subrogated to Matsushita's rights of recovery. As a result of the foregoing, Tokio and Chiyoda sought judgments totaling $493,311.41. After a bench trial, judgment was entered in favor of C & NW, API, and Raven against Tokio and Chiyoda.[1] We affirm.
 
 Liability of Carriers
 
 8
 With respect to C & NW and API, the Carmack Amendment (49 U.S.C. § 11707) pre-empts common law remedies for negligent damages of goods shipped under a proper bill of lading. Tokio Marine & Fire Insurance Co. v. Amato Motors, 996 F.2d 874 (7th Cir.1993).[2] However, neither carrier here violated the Carmack Amendment because the goods were transported from the C & NW ramp in Tacoma, Washington to its ramp in Chicago, placed on the chassis and the consignee, or notified party, was informed that the containers were available to be picked up. Nothing more was required by API's transportation agreement with Matsushita. Schiess-Froriep Corp. v. S.S. Finnsailor, 574 F.2d 123, 127 (2d Cir.1978); American President Lines, Ltd. v. Federal Maritime Board, 317 F.2d 887, 888 (D.C.Cir.1962). Delivery occurred when Amato was notified by C & NW that the containers had arrived at its pickup facility and had been placed on a chassis there. Liability of the two carriers terminated upon delivery of the shipment to the C & NW pickup chassis. Republic Carloading & Distrib. Co. v. Missouri Pacific R., 302 F.2d 381 (8th Cir.1962); Illinois Central R.R. v. Moore, 228 F.2d 873 (6th Cir.1956). Therefore neither C & NW nor API is liable to plaintiffs.
 
 Sanctions
 
 9
 On January 5, 1995, the district court ordered sanctions against plaintiffs' counsel. The amounts were $3,395.25 in costs payable to defendant API and $600 payable to the district court clerk as an additional sanction. (API Sanctions Br.App. 1).
 
 
 10
 In a December 2, 1994, memorandum opinion Judge Zagel criticized plaintiffs' counsel for improperly summarizing the testimony of four deponents. First the court criticized counsel for the absence of citations in the summaries in violation of Local Rule 12(n). The court also described the summaries as "misleading if they are not fraudulent." Therefore the court issued a rule to show cause why counsel should not be sanctioned (Ibid. 3).
 
 
 11
 In a December 15, 1994, opinion, the court again criticized the summarizing of the same four deponents' testimony, again pointing out the absence of citations to their testimony in violation of N.D. Ill. Local General Rule 12(n) and the misleading nature of the summaries. (Ibid. 17).
 
 
 12
 On January 5, 1995, the district judge explained that in response to his request for a brief opposing sanctions, counsel for API had only reprinted their "factual" summaries and supposedly pertinent deposition testimony, so that the imposition of the above amounts of sanctions was appropriate. (Ibid. 35).
 
 
 13
 While sympathetic to the district court's impatience at plaintiffs' counsel's "inaccurate" summaries and lack of appropriate supporting citations, this Court concludes that counsel was motivated by over-vigorous advocacy and was not intentionally attempting to mislead the court. Furthermore, as revealed by the press, plaintiffs' law firm was undergoing financial problems resulting in dissolution. The award of sanctions is reversed.
 
 Conclusion
 
 14
 Summary judgment for API and C & NW is affirmed. The award of sanctions against plaintiffs' counsel is reversed.
 
 
 
 [1]
 Raven is not an appellee
 
 
 [2]
 The pertinent part of the Carmack Amendment then in effect is reproduced in our prior opinion herein (996 F.2d at 877 n. 7). In substance it makes the receiving and delivering common carriers liable for the loss caused by the receiving, delivering or transporting carrier. Here neither appellee caused the loss