NYK LINE (NORTH AMERICA), INC., Plaintiff,

v.

THE BURLINGTON NORTHERN AND SANTA FE RAILWAY COMPANY, K & R Transportation, Inc., and Does 1 to 10, et al. Defendants.

No. CV 02–1081 R.

United States District Court, C.D. California, Western Division.

Sept. 16, 2002.

Law Offices of Leslie G. McMurray, Leslie G. McMurray, Valley Village, Counsel for Defendant Burlington Northern and Santa Fe Railway Company.

## ORDER

REAL, District Judge.

## 1. INTRODUCTION

This case concerns a cargo theft occurring in transit on an interstate movement of goods by rail and motor carriers. The cargo was a load of Philip Morris cigarettes stowed within sealed container no. TRLU 5376554. As part of the intermodal movement, BNSF carried the container from its Chicago rail ramp to its Los Angeles rail ramp. The cargo was then supposed to be picked up by motor carrier K & R Transportation Co. ("K & R") and drayed to one of the NYK terminals where it would be placed on an ocean carrier for further shipment to Tokyo, Japan. Prior to BNSF's receipt of the container, NYK had contracted with BNSF to move the cigarettes from Chicago to Los Angeles on a ramp-to-ramp move subject to BNSF Intermodal Rules and Policies Guide and the International Transportation Agreement MA60. NYK contracted separately with K & R to haul the load to the Port of Long Beach from Los Angeles.

BNSF received electronic instructions (an "EDI"), that BNSF was to carry container TRLU 5376554 containing "freight of all kinds" for shipper NYK on a Plan 85 (or ramp-to-ramp) movement from BNSF's rail ramp in Chicago Illinois to BNSF's rail ramp in Los Angeles, California. BNSF was not notified that this was a load of cigarettes. BNSF was directed to carry the load as "FAK" or freight of all kinds." Another company, Total Employee Management Company ("TEMCO") was under contract with BNSF to man the out-gates at the BNSF rail yard to ensure that only drivers with certain documentation were permitted to pass through the gates with cargo in tow.

On August 22, 2001 at 09:45 hours, the train carrying the container at issue arrived at BNSF's rail ramp. At 13:25 hours, the sealed container was "de-ramped" (taken off of the rails and placed on a chassis). NYK had listed itself as the notify party on the shipping instructions directing BNSF to notify it when the container was ready for pick up in Los Angeles. NYK was notified by BNSF of the container's availability for pick up at 16:49 hours on August 22nd. The container was subsequently out-gated at 23:35 hours by a driver driving a K & R truck who presented NYK's confidential pick up number to the TEMCO out-gate operator. The following morning, William Byron Velasquez, the K & R driver who was assigned the day prior by K & R to pick up this load and who had since the time of that assignment the confidential pick up information, arrived at the yard and learned that the container had already been picked up. A police investigation revealed that the K & R truck used in the heist was owned by William Velasquez's nephew, Jorge Isaac Moreno, who was also a K & R truck driver, and who parked his truck on the street on August 22nd and reported it stolen the following morning on August 23rd. Velasquez had been assigned by K & R on the date that the container arrived at the rail ramp, to dray the container to Long Beach. He had been given the confidential pick up information on the load on August 22, 2002, the date on which the load arrived at the rail ramp, but decided to wait until the following day to pick up the load.

In addition to a number of BNSF Railway police agents assigned to the case, the Federal Bureau of Investigations, local cargo theft investigation units from the California Highway Patrol, Los Angeles Police Department and the Los Angeles County Sheriff's Department were all placed on notice of the theft. A reward was authorized by BNSF for the arrest and conviction of the person or persons responsible for the theft. Reward posters were developed and widely distributed. In addition, a broadcast using a nation-wide law enforcement computer system was sent to numerous western U.S. law enforcement agencies advising of the theft and missing merchandise. The load of cigarettes was never recovered.

NYK contracted with Philip Morris to transport this container (among others) from Norfolk Virginia to Tokyo Japan via Los Angeles. NYK indemnified Philip Morris for the loss in an amount in excess of $424,735.83. NYK sued BNSF and K & R in subrogation for the amount paid. NYK subsequently named TEMCO as a defendant.

BNSF filed a Motion for Summary Judgment or Partial Summary Judgment asking that the court dismiss plaintiffs' complaint against it, or alternatively, that the court summarily adjudicate certain facts in BNSF's favor.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The United States Supreme Court has described the standard in summary judgment motions as the same as in a motion for a directed verdict under F.R.C.P. Rule 50(a). *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

> "... If the defendant in a run-of-the-mill civil case moves for summary judgment or proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. *The judge's inquiry therefore unavoidably asks whether a reasonable jury could find by a preponderance of the evidence that the plaintiff is entitled to a verdict—* 'whether there is (evidence) upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed ... (Emphasis added.)'"

*Id.*

Upon a showing that there is no genuine issue of material fact as to a particular claim or defense, the court may grant summary judgment in the party's favor "upon all or any part thereof." Fed. Rule Civ. Pro. 56(a),(b); *see Wang Labs. v. Mitsubishi Electronics America, Inc.*, 860 F.Supp. 1448, 1450 (C.D.Ca.1993). The standards in granting partial summary judgment are the same as for summary judgment. *American Nurses' Ass'n v. Illinois*, 783 F.2d 716, 729 (7th Cir.1986). The law applied to the evidence submitted herewith entitles BNSF to summary judgment against NYK.

## 2. PREEMPTION

█ BNSF argues that all of NYK's claims are state law causes of action which are preempted by The Carmack Amend-

ment. 49 U.S.C. § 11706. The decisions of federal courts are controlling in freight claim suits involving interstate shipments. *Adams Express Company v. Croninger*, 226 U.S. 491, 33 S.Ct. 148, 57 L.Ed. 314 (1913). In 1906, Congress enacted the Carmack Amendment as part of the former Interstate Commerce Act. Former 49 U.S.C. § 11707, currently 49 U.S.C. § 11706 (governing rail movements) and § 14706 (governing motor carrier movements) (hereinafter referred to as "Carmack"). The Carmack Amendment preempts all state common law claims and constitutes the exclusive avenue for recovery in any suit brought against an interstate carrier for loss or damage to the transported goods. *Missouri Pacific Railroad Co. v. Elmore & Stahl*, 377 U.S. 134, 137, 84 S.C. 1142, 1144, 12 L.Ed.2d 194 (1964). Carmack constitutes the exclusive remedy against an interstate carrier of goods for loss or damage to transported cargo such that all state law causes of action are absolutely preempted by Carmack. *Adams Express Co. v. Croninger*, 226 U.S. 491 [57 L.Ed. 314, 33 S.Ct. 148] (1913); *Pietro Culotta Grapes, Ltd. v. Southern Pacific Transp. Co.*, 917 F.Supp. 713, 716 (E.D.Ca.1996); *Hughes Aircraft Co. v. North American Van Lines* (9th Cir.1992) 970 F.2d 609; *Southeastern Express Co. v. Pastime Amusement Co.* (1936) 299 U.S. 28, 29, [57 S.Ct. 73, 81 L.Ed. 20] (Negligence claim preempted.); *Rini v. United Van Lines, Inc.* (1st Cir. 1997) 104 F.3d 502, 504–506 (Carmack preempts all state law claims, including negligence); *Arnell v. Mayflower Transit, Inc.* (D.Nev.1997) 968 F.Supp. 521, 523–524 (Carmack preempts breach of contract and negligence claims.); *Pierre v. United Parcel Service, Inc.*, 774 F.Supp. 1149 (N.D.Ill.1991)(Negligence, breach of contract, bailment claims preempted by Carmack.); *Harrah v. Minnesota Mining and Mfg. Co.* (D.N.J.1992) 809 F.Supp. 313, 318 (Claims for misdelivery or non-delivery are

preempted by Carmack); *see Waldrous, Inc. v. B.P.T. Air Freight Forwarding, Inc. et al.*, 1990 U.S. Dist. LEXIS 2592 at *4 (a shipper's indemnity claims are also preempted by the Carmack Amendment.)

■ In its First Amended Complaint, NYK pleads five causes of action against BNSF: (1) Negligence (1st cause of action), (2) Equitable Indemnity (2nd cause of action), (3) Breach of Contract (4th cause of action) (4) Breach of Bailment (5th cause of action), (5) Breach of Contract/Third Party Beneficiary (7th cause of action). Nowhere in its First Amended Complaint is there any reference to The Carmack Amendment nor to federal law. Instead, NYK complains that BNSF was "negligent", that BNSF "breached its contract," with NYK, that it "breached its contract" with K & R, and that BNSF breached its "bailment" duties and owes it an equitable indemnity. All of those claims are state law causes of action which are absolutely preempted by the Carmack Amendment entitling BNSF to summary judgment against NYK as a matter of law. *Intercargo Insurance Company v. Burlington Northern Santa Fe Railroad, et al.*, 185 F.Supp.2d 1103, 1113 (C .D. Cal., 2001)(all of plaintiff's state law causes of action were held to be preempted by the Carmack Amendment.)

The period of time following BNSF's delivery of the container (when the theft occurred) is also subject to Carmack Amendment. Indeed, it has been held that conduct occurring up to one week after deliver still fall within the Carmack Amendment so long as the plaintiff is seeking recovery for amounts attributable to loss of or damage to cargo. *Schultz v. Auld* (D.Idaho 1993) 848 F.Supp. 1497 at 1504. (Even conduct occurring from *days to weeks* after delivery and transpiring completely intrastate is preempted.); *Harrah v. Minnesota Mining and Mfg. Co.*

(D.N.J.1992) 809 F.Supp. 313, 318) (All post-delivery conduct is preempted so long as the plaintiff is seeking damages for loss of cargo, including claims for mis-delivery and non-delivery.) Thus all of plaintiffs' claims are state law claims which are preempted by the Carmack Amendment. Accordingly, motion for summary judgment is GRANTED for BNSF.

## 3. THE CARMACK AMENDMENT

■ Even if NYK had plead a Carmack Amendment claim against BNSF, it can not recover from BNSF thereunder because BNSF's duties with respect to container TRLU 5376554 were extinguished when BNSF de-ramped the container and notified NYK that the container was available for pick up. Under the ramp-to-ramp movement that NYK contracted with BNSF for, BNSF was only required to carry the container at issue to its rail ramp to make delivery.

■ Federal law governs the resolution of whether a delivery has occurred on an interstate movement of goods *Chesapeake & O. Ry. Co. v. Martin,* 283 U.S. 209, 213 [75 L.Ed. 983, 51 S.Ct. 453] (1931). The shipment at issue in this case moved under a "ramp-to-ramp" rate quote under which BNSF's only obligation was to place container TRLU 5376554 at its rail ramp and notify the notify party that the container was available for pick up, which BNSF did. *Intercargo Insurance Company v. Burlington Northern Santa Fe Railroad, et al.,* 185 F.Supp.2d 1103, 1113 (C.D.Cal., 2001); *Tokio Marine and Fire Insurance Company, Ltd. v. Chicago & Northwestern Transportation Company,* 129 F.3d 960 (1997); *Eddie Bauer, Inc. v. Focus Transp. Services* (N.D.Ill., 1995) 881 F.Supp. 1174.

*Intercargo Insurance Company v. Burlington Northern Santa Fe Railroad, supra,* (hereafter "*Intercargo* ") is directly on point. In *Intercargo,* a container of high value electronics was stolen from the same BNSF rail yard by an imposter posing as an ESCO Transportation Co. truck driver, the company hired to pick up the container from the rail yard. BNSF carried the container in the *Intercargo* case on a ramp-to-ramp move from Chicago to Los Angeles, just as in that movement. BNSF had de-ramped the container from its rails and notified the notify party of its availability for pick up, just as in this case. The performance of those acts comprised legal delivery, extinguishing any further duty on BNSF's part with respect to the container, and entitling BNSF to summary judgment against the plaintiff as a matter of law. *Intercargo, supra,* at 1113. In granting summary judgment for BNSF, the honorable Judge Florence Marie–Cooper held that:

> "...BNSF is entitled to summary judgment as to plaintiff's claim under the Carmack Amendment. The uncontroverted facts establish that BNSF contracted to transport the shipment "ramp-to-ramp." BNSF's liability ended when it safely delivered the shipment to the ramp in the Hobart Yard and notified Esco that the shipment was available to be picked up. *See Tokio Marine and Fire Ins. Co., Ltd. v. Chicago & Northwestern Transp. Co.,* 129 F.3d 960 (7th Cir.1977)(holding that rail carrier had no liability under the Carmack Amendment for a ramp-to-ramp shipment where rail carrier delivered shipment to destination ramp and notified consignee that hte containers were available for pick up). Accordingly, the Court HEREBY GRANTS summary judgment in favor of BNSF as to plaintiff's Carmack Amendment claim. Because of the preemptive scope of the Carmack Amendment, the only claim plaintiff may assert against BNSF is a claim for damages under the Carmack Amendment; accordingly the Court also

HEREBY GRANTS summary judgment in favor of BNSF as to plaintiff's remaining state law claims."

*Intercargo, supra,* at 1113.

Similarly, the *Tokio Marine* case on which the Court relied in *Intercargo* is on point. In *Tokio Marine,* the plaintiff insurance company sued the various carriers in the line of transit to recover money paid out on a claim after cargo was stolen in transit. The cargo was also a load of Panasonic electronic goods also owned by Matsushita which were also stolen en route from a rail ramp by an imposter impersonating the connecting carrier's pick up driver. In *Tokio Marine,* the initial carrier had subcontracted with the Union Pacific Railroad Company and the Canadian National & Northwestern Transportation Company ("C & NW") for portions of the movement of four containers, of which one was stolen and sued upon. C & NW was to handle the interchange of the containers when they arrived at the C & NW rail ramp in Chicago. Trucker Amato Motors, Inc. ("Amato") was to dray the container from the rail ramp to Panasonic's warehouse facility, the final destination.

On December 15, 1989, the C & NW notified Amato that the container would be made available to Amato on December 16, 1989. The container arrived at the Chicago railhead on December 16, 1989 and were placed on a chassis. Since Amato was unable to send a driver to pick up the container at that time, it subcontracted the move to another trucking company, Raven Transport, Inc. On December 18th a driver driving a Raven tractor arrived at the railhead with the container pick up information, hooked up to the container and drove it off the yard. Thirty minutes later the "real" Raven driver arrived to learn that C & NW had released the container to an imposter. On a motion for summary judgment, the trial court granted summary judgment for the rail carriers since by placing the container at the rail ramp and giving notice to the notify party, they had effectively made delivery to the next carrier in the line of transit prior to the theft by the imposter. The plaintiff insurance company appealed and the appellate court affirmed the defense verdict for the railroad stating:

"With respect to C & NW and API, the Carmack Amendment (49 U.S.C. § 11707) pre-empts common law remedies for negligent damages of goods shipped under a proper bill of lading. [Citation] **However, neither carrier here violated the Carmack Amendment because the goods were transported from the C & NW ramp in Tacoma, Washington to its ramp in Chicago, placed on the chassis and the consignee, or notified party, was informed that the containers were available to be picked up. Nothing more was required by API's transportation agreement with Matsushita.** [Citations.] **Delivery occurred when Amato was notified by C & NW that the containers had arrived at its pickup facility and had been placed on a chassis there. Liability of the two carriers terminated upon delivery of the shipment to the C & NW pickup chassis.** *Republic Carloading & Distrib. Co. v. Missouri Pacific R.,* 302 F.2d 381 (8th Cir.1962); *Illinois Central R.R. v. Moore,* 228 F.2d 873 (6th Cir.1956). Therefore neither C & NW nor API is liable to plaintiffs."

*Tokio Marine,* supra at 961 (emphasis added).

Here, BNSF contracted with NYK to carry the container to its Los Angeles ramp. NYK was listed as the notify party on BNSF's shipping instructions. BNSF provided notice to NYK of the container's availability for pick up at 4:49 in the afternoon after the container was de-ramped.

**1182**

BNSF had no further duties to perform as a matter of law and BNSF absolutely performed all of its duties. At the moment notice was given to K & R of the availability of the container for pick up at the rail ramp, delivery was complete. The theft occurred some seven hours later, after delivery to K & R, after the container was off of BNSF's line and at a time when BNSF had no further duties with respect to it. See also, *(Oregon–Washington R.R. v. McGinn* (1922) 258 U.S. 409 at 413 [42 S.Ct. 332, 66 L.Ed. 689] )(When a connecting carrier makes delivery of the goods to the next carrier in a line of transit, that carrier's duty is extinguished as a matter of law.); *(Intech, Inc. v. Consolidated Freightways, Inc.* (1st Cir.1987) 836 F.2d 672, 674); *(Republic Carloading & Distributing Co. v. Missouri Pac. Ry. Co.* (8th Cir.1962) 302 F.2d 381, 386) (The liability of a carrier for damages to goods shipped through interstate commerce extinguishes upon delivery); *(Eddie Bauer Inc. v. Focus Transp. Services* (N.D.Ill.1995) 881 F.Supp. 1174 at 1178) (A carrier's liability for loss of goods shipped through interstate commerce ends upon delivery to the next carrier in the line of transit.) Thus even if plaintiffs had plead a Carmack Amendment claim against BNSF, BNSF would be entitled to summary judgment.

For all of the foregoing reasons, BNSF's motion for summary judgment is GRANTED. Judgement is to be entered for BNSF.