NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0062n.06

Case No. 22-3376

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| EMCO CORPORATION; GENERALI VERSICHERUNG AG, a/s/o EMCO Maier GmbH; EMCO MAIER GMBH, | ) ) ) | **FILED**<br>Jan 31, 2023<br>DEBORAH S. HUNT, Clerk |
| Plaintiffs-Appellants, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| v. | ) ) | COURT FOR THE NORTHERN DISTRICT OF OHIO |
| MILLER TRANSFER & RIGGING CO., | ) ) | O P I N I O N |
| Defendant-Appellee. | ) ) | |

Before: SUTTON, Chief Judge; COLE and GRIFFIN, Circuit Judges.

COLE, Circuit Judge. In this shipping dispute, EMCO Corporation ("EMCO") contends that Miller Transfer & Rigging Company ("Miller") is liable under the Carmack Amendment, 49 U.S.C. § 14706, for damage caused to EMCO's industrial machine. Because EMCO failed to establish that the machine was damaged upon delivery, we affirm.

## I. BACKGROUND

EMCO wanted to package and ship a Hyperturn 110-SM2Y-1700 industrial machine and corresponding parts (collectively, the "Cargo") from Cuyahoga Falls, Ohio, to Hallein, Austria. An EMCO employee contracted with Miller for the interstate portion of the shipment's transport. The employee contracted for "packaging and shipment" of the Cargo within the United States but disclosed to Miller that the Cargo's ultimate destination was overseas in Austria. The final agreement between EMCO and Miller was for (1) transportation from Cuyahoga Falls, Ohio, to

Dover, Ohio; (2) packaging in Dover, including costs for the "[c]rate, VCI,[1] unloading, reloading, and securing the machine in crate"; and (3) transportation from Dover to the Port of Baltimore, Maryland. (Willard Aff., R. 33-6, PageID 297.) Unbeknownst to EMCO, Clarion Warehouse provided the packaging services while Miller transported the Cargo. Clarion and Miller, two separate legal entities, are subsidiaries of the same holding company. Miller subcontracts with Clarion for packaging services on many of Miller's shipping contracts. EMCO contracted with a different third-party shipping company, Rotra, to transport the Cargo from the Port of Baltimore to Austria.

Notably, three separate bills of lading governed the Cargo's shipment. "A bill of lading records that a carrier has received goods from the party that wishes to ship them, states the terms of carriage, and serves as evidence of the contract for carriage." *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 18–19 (2004); *see* 49 U.S.C. § 14706(a)(1). A through bill of lading, not at issue here, "cover[s] cargo for the entire course of shipment" when cargo is shipped from overseas or to overseas countries. *Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp.*, 561 U.S. 89, 93 (2010); *see also CNA Ins. Co. v. Hyundai Merch. Marine Co., Ltd.*, 747 F.3d 339, 366 (6th Cir. 2014). A straight bill of lading, by contrast, indicates consignment to one entity; carriers transporting cargo under the Interstate Commerce Act (i.e., not internationally) are required to use a straight bill of lading. 49 C.F.R. § 1035.1. The bills of lading covering the Cargo were (1) from Cuyahoga Falls, Ohio to Dover, Ohio, which included shipment and packaging of the Cargo; (2) from Dover, Ohio to Baltimore, Maryland; and (3) from Baltimore, Maryland to Hallein, Austria. Miller issued the first two bills of lading, and Rotra issued the final bill.

---

[1] VCI stands for "vapor corrosion inhibitor," and it protects a package's contents from corrosion.

On October 16, 2017, Miller transported the Cargo by truck from Cuyahoga Falls to Clarion's Dover warehouse. Nowhere in the record do the parties suggest that the Cargo was damaged upon its arrival in Dover. Clarion then packaged and crated the Cargo. Miller transported the Cargo by truck on November 14, 2017, from Dover to the consignee, the Ceres Marine Terminal at the Port of Baltimore. The Cargo was delivered to the consignee on November 15, 2017, and there is no indication that the Cargo was damaged at this time. Between November 15 and November 28, the Cargo remained outdoors. On November 28, 2017, the Cargo was brought onto the vessel Drive Green Highway for international transport. The vessel arrived at the Port of Bremerhaven, Germany, on December 15, 2017. On December 20, 2017, Interfracht, an inland carrier, transported the Cargo to EMCO's facility in Austria.

At some point after the Cargo's arrival in Austria, EMCO discovered extensive damage to the Cargo. Though the parties dispute when the damage to the Cargo occurred and when EMCO first discovered this damage, the parties agree that the damage occurred after the Cargo arrived at the Port of Baltimore.

EMCO filed the instant lawsuit in the Northern District of Ohio against Miller seeking damages under the Carmack Amendment for Miller's alleged "fail[ure] to adequately package the Cargo, which resulted in the Cargo being delivered in damaged condition." (Compl., R. 1, PageID 1, 6.) On April 19, 2021, both Miller and EMCO moved for summary judgment. Each party submitted distinct statements of undisputed material facts in support of their respective motions. Miller later also filed a motion to strike many of EMCO's exhibits and declarations.

The district court granted summary judgment to Miller and denied summary judgment to EMCO. The court first found that the Carmack Amendment, rather than the Carriage of Goods by Sea Act, 46 U.S.C. § 30701, covered the interstate portion of the Cargo's shipment—the first two

bills of lading issued by Miller. It then dismissed the lawsuit, finding that Miller's point of delivery was the Port of Baltimore, and EMCO was unable to make the required prima facie showing that the Cargo was damaged upon delivery. The district court did not rule on Miller's motion to strike because it was no longer relevant based on the district court's opinion. EMCO timely appealed.

## II. ANALYSIS

We review a grant of summary judgment de novo. *Zakora v. Chrisman*, 44 F.4th 452, 464 (6th Cir. 2022). Summary judgment may only be granted where there is no genuine dispute of material fact and Miller is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a).

The Carmack Amendment is a federal statute that governs liability for damages to goods "transported in the United States or from a place in the United States to a place in an adjacent foreign country when transported under a through bill of lading[.]" 49 U.S.C. § 14706(a)(1). The Amendment "makes a motor carrier fully liable for damage to its cargo unless the shipper has agreed to some limitation[.]" *Exel, Inc. v. S. Refrigerated Transp., Inc.*, 807 F.3d 140, 148 (6th Cir. 2015). In making motor carriers strictly liable, the scheme "relieves shippers of the burden of determining which carrier caused the loss as well as the burden of proving negligence." *Id.* The statute defines "transportation" broadly, and therefore encompasses damage to any cargo during the physical movement of the cargo as well as "services related to th[e] movement" and packing of the cargo. 49 U.S.C. § 13102(23); *see also Ga., Fla. & Ala. Ry. Co. v. Blish Milling Co.*, 241 U.S. 190, 196 (1916).

The Supreme Court has established a burden-shifting framework to evaluate Carmack Amendment claims. *See Mo. Pac. R.R. Co. v. Elmore & Stahl*, 377 U.S. 134, 138 (1964). To establish a prima facie case for Carmack liability, EMCO must demonstrate (1) delivery to the carrier in good condition, (2) arrival in damaged condition, and (3) the amount of damages owed.

*Id.* Here, both parties agree that EMCO has established the Cargo was in good condition when it was delivered to Miller. But the parties disagree regarding the second prima facie showing. Miller argues, and the district court agreed, that the relevant point of arrival is the Port of Baltimore, where the Cargo arrived undamaged. EMCO argues that the point of arrival is Austria; so long as "the seeds of the Cargo's damage (i.e., improper packing) were sown while the Cargo was in Miller's custody," Miller remains liable for this damage even if it was not discovered until the Cargo's final delivery, after the Cargo left Miller's control. (Reply Br. 14.)

Arrival under a straight bill of lading is defined as "delivery of the goods to the consignee," which typically occurs when nothing "remains to be done by the carrier." *Intech, Inc. v. Consol. Freightways, Inc.*, 836 F.2d 672, 674 (1st Cir. 1987) (citation omitted); *see also Republic Carloading & Distrib. Co. v. Mo. Pac. R.R. Co.*, 302 F.2d 381, 386 (8th Cir. 1962) ("Common carrier liability ceases upon delivery of the shipment to the consignee."). "Generally speaking," nothing remains to be done "when the possession, custody, and control of the goods involved have been surrendered to and accepted by the carrier." *Ill. Cent. R.R. v. Moore*, 228 F.2d 873, 877 (6th Cir. 1956). "'[D]elivery' must mean delivery as required by the contract[.]" *Am. Synthetic Rubber Corp. v. Louisville & Nashville R.R. Co.*, 422 F.2d 462, 466 (6th Cir. 1970) (quoting *Blish Milling*, 241 U.S. at 195). And the interpretation of the bill of lading, a contract, is governed by federal law. *See Chesapeake & Ohio Ry. Co. v. Martin*, 283 U.S. 209, 213 (1931) ("[S]ince it was issued in respect of an interstate shipment pursuant to an act of Congress, the bill of lading is an instrumentality of such commerce, and the question whether its provisions have been complied with is a federal question to be determined by the application of federal law."). As such, "the intention of the parties defines its scope." *Intech, Inc.*, 836 F.2d at 674 (citing *Blish Milling*, 241 U.S. at 195).

Miller's second bill of lading, which covered transport of the Cargo from Dover to Baltimore, is at issue here. A straight bill of lading "simply requires delivery of the goods to the consignee," listed here as Ceres Marine Terminal in Baltimore. *See Intech*, 836 F.2d at 674. Thus, delivery occurred when Miller relinquished control over the Cargo to Ceres Marine Terminal. As the district court properly held, "[u]nder Carmack, Miller cannot be held responsible for damage allegedly occurring after the Cargo left the Port of Baltimore, which segment was performed under a separate bill of lading that did *not* incorporate Miller." (District Ct. Op., R. 69, PageID 2476.)

EMCO's "seeds of damage" argument does not change the point of delivery. There is no support for this argument. And indeed, Carmack liability runs solely interstate. If we were to adopt EMCO's argument, then we would expand Carmack liability internationally despite there being an interstate-only bill of lading governing the dispute.

EMCO's analysis that delivery is final when there is nothing left to be done, and that Miller did have something left to do—ensure that the packaging survived overseas travel—is similarly unavailing. In *Intech*, the carrier had a concrete action left to complete before delivery could be effectuated, which was unloading the shipment. 836 F.2d at 675; *see also Starboard Holdings Ltd. v. ABF Freight Sys., Inc.*, 235 F. Supp. 3d 1363, 1373 (S.D. Fla. 2017) (determining that final delivery did not occur until the shipment arrived at plaintiffs' warehouse, because defendants still had to secure an appointment and deliver the shipment to plaintiffs' warehouse); *Pilgrim Distrib. Corp. v. Terminal Transp. Co.*, 383 F. Supp. 204, 208 (S.D. Ohio 1974) (finding carrier was not liable under the Carmack Amendment because the damage to the cargo occurred after carrier attempted delivery per the terms of the bill of lading, and therefore fully discharged its duties); *Tokio Marine & Fire Ins. Co. v. Chi. & Nw. Transp. Co.*, 129 F.3d 960, 961 (7th Cir. 1997)

(holding that carrier was not liable for package's theft because the package was delivered to the consignee per the terms of the transportation agreement prior to the theft).

Per the contract terms, delivery occurred at the Port of Baltimore when Miller delivered the Cargo to the consignee, as required by the straight bill of lading. The district court properly held that under the Carmack Amendment, it was EMCO's burden to show that the Cargo arrived in damaged condition at the Port of Baltimore. Since EMCO cannot do so, Miller is not liable for any damage to the Cargo that occurred after Miller delivered the Cargo in Baltimore.

### III. CONCLUSION

For the foregoing reasons, we affirm the district court's order granting summary judgment to Miller.